Filed 2/8/16  P. v. Bica CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>FELICIA MARIE BICA,<br><br>　　　Defendant and Appellant. | H041776<br>(Santa Cruz County<br>Super. Ct. No. F23056) |

## I.　　INTRODUCTION

A jury found defendant Felecia Marie Bica guilty of nine offenses:  assault with a deadly weapon on a peace officer (Pen. Code, § 245, subd. (c); counts 1 & 2), evading an officer (Veh. Code, § 2800.2, subd. (a); count 3), possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a); count 4), receiving stolen property (Pen. Code, § 496, subd. (a); count 5), reckless driving (Veh. Code, § 23103, subd. (b); count 6), hit and run driving (Veh. Code, § 20002, subd. (a); count 7), resisting a peace officer (Pen. Code, § 148, subd. (a); count 8), and driving with a license that was suspended for a conviction of driving under the influence (Veh. Code, § 14601.2, subd. (a); count 9). The trial court ordered defendant to serve a prison term of four years eight months.

On appeal, defendant contends the trial court erred by modifying the accident instruction (CALCRIM No. 3404) to include a reference to "culpable negligence" and by

answering the jury's question about the definitions of the terms "culpable" and "culpable negligence." Defendant also contends the trial court erred by denying her motion for a new trial, in which she advanced the same contentions, and that her trial counsel was ineffective for failing to properly object to the modified accident instruction.

For reasons that we will explain, we will reverse the judgment and remand for retrial on both counts of assault with a deadly weapon on a peace officer (Pen. Code, § 245, subd. (c); counts 1 & 2).

## II. BACKGROUND

### A. *Prosecution Evidence*

On the evening of July 7, 2012, several Capitola police officers responded to a report of suspicious persons in the Capitola Mall. The suspicious persons had been seen in a black BMW that was parked near the employee parking area, and they had subsequently entered the mall. Officers made contact with the two people, William Stayton and Kelly McDonald, then escorted them out of the mall. As the officers spoke to Stayton, he pointed towards a male and female coming out of the mall. Stayton said, "There's Felicia," and identified defendant as the person who had been driving the BMW.

Defendant and her companion walked quickly toward the BMW. Officer Daniel Weagle and Officer Craig Evans got into their marked patrol car and drove towards the BMW. As they approached the BMW, it was backing out of a parking stall and beginning to drive off. The officers noticed that the vehicle had a brake light out, and another officer had previously noticed drug paraphernalia in the car, so they initiated a vehicle stop by turning on their emergency lights and siren. The BMW stopped.

Officers Weagle and Evans approached the BMW from both the driver's side and passenger side. However, just as the officers reached the rear bumper of the BMW, it sped off. The two officers returned to their patrol car, and another officer in a second

2

patrol vehicle began to follow the BMW, with his emergency lights and siren activated. The BMW went up an embankment at a speed of about 40 miles per hour and then turned onto Clares Street. Officers Weagle and Evans pursued the BMW, with the lights and siren of their patrol vehicle on.

The BMW drove down Clares Street and passed a stop sign, without stopping. The BMW appeared to accelerate, and it pulled into the lane for oncoming traffic. The BMW then went through a red light at the intersection of 41st Avenue and Clares Street. As Officers Weagle and Evans pursued the BMW, defendant was driving at a speed of about 75 miles per hour. The speed limit was 25 miles per hour. A few blocks down the street, the BMW's tires started "smoking," and it came to a stop at the intersection of 46th Avenue and Clares Street. Officers Weagle and Evans stopped their patrol vehicle. The BMW then went into reverse, passed the officers' patrol vehicle, and stopped about 20 to 30 feet behind the patrol vehicle.

The BMW started driving towards Officers Weagle and Evans, both of whom were in the process of exiting their patrol vehicle. Officer Evans had exited from the passenger side of the patrol vehicle, and Officer Weagle was in the process of exiting from the driver's side. The BMW drove "straight toward" the patrol vehicle. Officer Evans dove back into the patrol car, and the BMW slammed into the patrol car's open passenger side door. The impact to the patrol vehicle caused glass to fly "everywhere" and caused Officer Evans to end up on the center console, leaning on Officer Weagle.

After colliding with the door of the police vehicle, the BMW turned right and "took off" down 46th Avenue. The officers followed the BMW, which was going "[m]uch faster" than the speed limit of 25 miles per hour.

At the end of 46th Avenue, the BMW crashed into a tree in the front yard of a residence, then slid into a vehicle parked in the driveway of the residence. The driver's door opened, and defendant ran down the street. Officer Weagle pursued her on foot, ordering her to stop and warning her that he was going to use his Taser on her.

3

Defendant continued to run, so Officer Weagle deployed his Taser, which caused defendant to fall to the ground. When officers subsequently tried to take defendant into custody, she "actively resist[ed]." Defendant punched and kicked the officers and tried to get away. A police dog was deployed, and it bit defendant. Defendant then began complying.

During an interview following her arrest, defendant said she had driven away from the officers because she was scared. Defendant knew there was a warrant out for her arrest. Defendant acknowledged that she had been speeding, saying, "I'm a fucking retard dude. I'm a fucking idiot. Right now I want to kill myself." Defendant stated that she felt ashamed for almost hitting Officer Evans, and she apologized. When Officer Weagle pointed out that defendant was "inches from taking his life," defendant replied, "I didn't mean to, you know that right." Officer Weagle said, "[Y]ou ran straight toward him in a car." Defendant replied, "No[,] I was trying to go around you. I'm sorry."

Defendant's vehicle was searched after the incident. In a black purse, officers found several bindles of methamphetamine. Officers also found a driver's license for Leah Ashley, whose wallet had previously been stolen.

### B. Defense Testimony

Defendant testified that she had used methamphetamine and heroin on the morning of the incident. She had then gone out to look for more drugs. She found Stayton and McDonald, who said they could possibly get some heroin. Stayton and McDonald got into defendant's car, and they all went to the Capitola Mall, which was near the location of Stayton's heroin connection. At the mall, defendant went inside to look around while Stayton made contact with his connection. While at the mall, she ran into Thomas Farrell, who said he had seen Stayton with the police. Farrell asked defendant for a ride, and she agreed. Defendant knew she had warrants out for her arrest and was scared.

Defendant saw Stayton with the police outside of the mall. She walked to her car and got in. Farrell helped her jump-start the car, and they began to drive away from "where the police were." The police began driving towards her and turned their lights and sirens on. Defendant pulled over, but after she saw the officers approaching, she "panicked" and drove away. She drove fast and went over a sidewalk, and she accelerated through an intersection, knowing the police were in pursuit. Her car slid out when she attempted to make a turn, and she came to a stop. Defendant put the car in reverse and backed up, intending to drive away from the police. She began driving forward, intending to turn right and believing she had room to go around the police car. Defendant did not see the door of the police vehicle open until she "was actually swiping it." She did not see an officer.

Defendant continued driving until her car "landed in the driveway" of a residence. She then got out and began running. She was eventually shot with a Taser. After that, she remembered falling onto her face and then dogs biting her. When the police handcuffed her and walked her to the police vehicle, they asked her if she had seen the officer that she almost hit, and she told them, "[N]o."

Defendant admitted trying to evade the police, possessing methamphetamine, and possessing stolen property, but she claimed she was cooperative after being shot with the Taser. Defendant also denied that she tried to hit the officers with her vehicle. Defendant claimed her intent was to drive away from the police "without hitting that police officer." She testified, "I swiped the door not on purpose." She was not expecting the officer to exit the vehicle when she began driving forward.

Defendant admitted the following prior convictions: a 2008 petty theft, a 2008 petty theft with a prior, a 2009 petty theft with a prior, a 2010 escape from jail, a 2011 bringing a hypodermic needle into jail, and a 2011 escape.

### C. Arguments, Verdicts and Sentence

During argument to the jury, defendant's trial counsel conceded defendant's guilt to all of the charged offenses except for the two counts of assault on a peace officer. Defendant's trial counsel argued that defendant was trying to get away from the officers by turning right around their vehicle, pointing out that defendant had a "clear path" around the patrol vehicle until Officer Evans opened his door, such that the natural and probable result of defendant's action was not necessarily the application of physical force. Defendant's trial counsel did not explicitly mention the accident defense during his argument to the jury. The prosecutor argued that the accident instruction was not applicable.

A jury found defendant guilty of all nine charged counts: assault with a deadly weapon on a peace officer (Pen. Code, § 245, subd. (c); counts 1 & 2), evading an officer (Veh. Code, § 2800.2, subd. (a); count 3), possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a); count 4), receiving stolen property (Pen. Code, § 496, subd. (a); count 5), reckless driving (Veh. Code, § 23103, subd. (b); count 6), hit and run driving (Veh. Code, § 20002, subd. (a); count 7), resisting a peace officer (Pen. Code, § 148, subd. (a); count 8), and driving with a license that was suspended for a conviction of driving under the influence (Veh. Code, § 14601.2, subd. (a); count 9).

Defendant filed a motion for a new trial, in which she argued that the trial court erred by modifying the accident instruction (CALCRIM No. 3404) to include a reference to "culpable negligence" and by improperly answering the jury's subsequent question about the definitions of the terms "culpable" and "culpable negligence." The trial court denied the motion for a new trial, and at the sentencing hearing, the trial court ordered defendant to serve a prison term of four years eight months, composed of the four-year midterm for count 1, a stayed term for count 2, a consecutive eight-month term for count 3, and concurrent county jail terms for counts 4 through 9.

6

## III.   DISCUSSION

On appeal, as in her motion for a new trial, defendant contends the trial court erred by modifying the accident instruction (CALCRIM No. 3404) to include a reference to "culpable negligence" and by answering the jury's question about the definitions of the terms "culpable" and "culpable negligence."  Defendant also contends the trial court erred by denying her motion for a new trial and that her trial counsel was ineffective for failing to properly object to the modified accident instruction.

### A.   *Proceedings Below*

The trial court instructed the jury, pursuant to CALCRIM No. 252, that the crime of assault on a peace officer required "general criminal intent," and that defendant could be found guilty of that crime only if she committed "the prohibited act" with "wrongful intent."  The instruction further provided:  "A person acts with wrongful intent when he or she intentionally does a prohibited act . . . ."

The trial court instructed the jury on assault with a deadly weapon on a peace officer pursuant to CALCRIM No. 860.  In pertinent part, the instruction provided:  "The defendant is charged in Counts 1 and 2 with assault with a deadly weapon, other than a firearm, on a peace officer.  [¶]  To prove that the defendant is guilty of this crime, the People must prove that:  [¶] One, the defendant did an act with a deadly weapon other than an a firearm that, by its nature, would directly and probably result in the application of force to a person; [¶]  Two, the defendant did that act willfully; [¶]  Three, when the defendant acted, she was aware of facts that would lead a reasonable person to realize her act, by its nature, would directly and probably result in the application of force to someone; [¶]  Four, when the defendant acted, she had the present ability to apply force with a deadly weapon, other than a firearm, to a person; [¶]  Five, when the defendant acted, the person assaulted was lawfully performing his duties as a peace officer; [¶]  And, six, when the defendant acted, she knew, or reasonably should have known, that the

7

person assaulted was a peace officer who was performing his duties. [¶] Someone commits an act willfully when he or she does it willingly, or on purpose. . . ."

The trial court instructed the jury on the accident defense pursuant to CALCRIM No. 3404, as follows: "The defendant is not guilty of an assault with a deadly weapon if she acted without the intent required for that crime but acted, instead, accidentally. You may not find the defendant guilty of assault with a deadly weapon unless you are convinced beyond a reasonable doubt that she acted with the required intent."

After reading all of the jury instructions, the trial court indicated it wanted to modify the accident instruction by adding a second paragraph incorporating Penal Code section 26, subdivision (5), which states that a person is not "capable of committing a crime" if he or she "commit[ted] the act charged through misfortune or by accident, when it appears that there was no evil design, intention, or culpable negligence."

The prosecutor objected, noting that neither the prosecution nor defense was "asking for that." The prosecutor argued that the added language would be confusing and would draw more attention to the instruction. The trial court then asked defendant's trial counsel if he had anything to add. Defendant's trial counsel said, "No."

The trial court subsequently told the jury: "I read you an instruction about accident, and I wanted to add a – that the – the 'Accident' instruction is based upon the legal principle that persons are not capable of committing a crime who commit the act charged through misfortune or by accident, when it appears that there was no evil design, intention, or culpable negligence."

During deliberations, the jury submitted an inquiry to the trial court, asking, "Can we have a definition [of] 'culpable' and 'culpable negligence'?" The trial court indicated it planned to respond by reading the jury definitions from Black's Law Dictionary and other dictionaries.

Defendant's trial counsel objected, advocating for further argument on the issue and stating that the trial court's proposed definition of "culpable negligence" should not

8

be read to the jury. Defendant's trial counsel specifically objected "to the dictionary definitions being read."

The trial court ultimately told the jury: "I'm going to give you a – an ordinary definition for each term and a definition that is contained in what's called *Black's Law Dictionary,* a legal – it – it contains definitions of lots of legal terms. [¶] So in the ordinary dictionary, essentially, the ordinary definition is, ' "Culpable" means deserving blame, at fault, in the wrong.' [¶] In *Black's Law Dictionary*, ' "Culpable" means, blamable, censurable, involving the breach of a legal duty or the commission of fault. The term is not necessarily equivalent to "criminal," for, in present use, and notwithstanding its derivations, it implies that the act or conduct spoken of is reprehensible or wrong but not that it involves malice or a guilty purpose. "Culpable" in fact connotes fault rather than guilt.' [¶] So those are the two definitions for 'culpable.' "

The trial court further told the jury: "Then 'culpable negligence,' the ordinary definition is as follows: ' "Culpable negligence" means recklessly acting without reasonable caution and putting another person at risk of injury or death.' [¶] The *Black's Law Dictionary* definition . . . states, ' "Culpable negligence" is failure to exercise that degree of care rendered appropriate by the particular circumstances and which a man of ordinary prudence in the same situation and with equal experience would not have omitted.' [¶] And then there's a later definition that just says, 'This term applies to a thing that a reasonable and prudent person would not do.' "

The trial court also provided the jury with written definitions of the terms "culpable" and "culpable negligence."

After the jury returned its verdicts, defendant filed a motion for a new trial. Defendant argued that the trial court should not have added the "culpable negligence" language to CALCRIM No. 3404 and that the trial court had improperly answered the jury's question about the definitions of "culpable" and "culpable negligence." Defendant

9

contended that the errors violated her rights to due process and a fair trial under the federal and state constitutions.

### B. Analysis

Defendant contends the trial court erred by modifying CALCRIM No. 3404 to include the "culpable negligence" language of Penal Code section 26, subdivision (5). Defendant argues that the modified instruction erroneously allowed the jury to convict her of the two assaults on a peace officer if it found that she had the mental state of "culpable negligence" rather than general criminal intent. Defendant also contends the trial court "compounded" that error by instructing the jury on the definitions of the terms "culpable" and "culpable negligence" in response to the jury's request.[1]

### 1. Forfeiture

The Attorney General contends that defendant forfeited her challenge to the trial court's modification of CALCRIM No. 3404. In her reply brief, defendant argues that we should reach the merits of her claim for several reasons: because the forfeiture rule does not apply when the trial court gives an instruction that incorrectly states the law, because the instruction affected her substantial rights, because her claim involves fundamental constitutional rights, and because the issue was raised in her motion for a new trial.

Defendant is correct that the forfeiture rule does not apply when "the trial court gives an instruction that is an incorrect statement of the law," which is what her claim asserts. (See *People v. Hudson* (2006) 38 Cal.4th 1002, 1012.) Moreover, here the prosecutor strenuously objected to the instruction. The purpose of the forfeiture rule is " ' " 'to encourage a defendant to bring errors to the attention of the trial court, so that they may be corrected or avoided and a fair trial had. . . .' " ' " (*People v. Simon* (2001)

---

[1] Defendant does not argue that the definitions of the terms "culpable" and "culpable negligence" were erroneous, however.

25 Cal.4th 1082, 1103.) The prosecutor's objection served this purpose. Thus, we proceed to consider the merits of defendant's claim.[2]

## 2. Modification of CALCRIM No. 3404

In asserting that the trial court erred by adding the "culpable negligence" language to the instruction on the accident defense, defendant relies primarily on *People v. Lara* (1996) 44 Cal.App.4th 102 (*Lara*). In *Lara*, the defendant was convicted of battery with serious bodily injury on his girlfriend. (*Id.* at p. 105.) The defendant and his girlfriend had argued, and the defendant had begun to leave. As the defendant turned around to face his girlfriend, his hand struck his girlfriend's nose, breaking it. (*Ibid.*) The girlfriend later gave a statement and testified that the defendant had possibly hit her by accident. (*Id.* at p. 106.)

The jury in *Lara* was given the "standard instruction on general criminal intent." (*Lara, supra,* 44 Cal.App.4th at p. 106; see CALJIC No. 3.30.) The jury was also instructed on accident pursuant to CALJIC No. 4.45, which provided: " 'When a person commits an act or makes an omission through misfortune or by accident under circumstances that show neither criminal intent nor purpose, nor [criminal] negligence, [he] [she] does not thereby commit a crime.' " (*Lara, supra,* at p. 106.) The trial court further instructed the jury with a modified version of CALJIC No. 3.35, which stated, " 'You may find the defendant guilty of [the] crime charged or the lesser crimes if there exists a union or joint operation of act or conduct and criminal negligence.' " (*Lara, supra,* at pp. 106-107.)

The *Lara* court held that it was error to give the instructions that included the term "criminal negligence," because criminal negligence was a lower mental state than what was required for battery. (*Lara, supra,* 44 Cal.App.4th at p. 108.) The court explained

---

[2] Because we find no forfeiture, we need not address defendant's claim that her trial counsel was ineffective for failing to properly object.

that the " 'criminal negligence' " portion of the accident instruction should only be given when the charged offense requires negligence, such as in a case of involuntary manslaughter. (*Id.* at p. 109 & fn. 2.) Since battery is a general intent crime that requires the defendant intend to commit " 'the act that causes the harm,' " there is no criminal liability when the defendant's mental state is merely " 'criminal negligence.' " (*Id.* at p. 107.)[3] The court summarized its holding: "Where, as here, the defendant is charged with a general intent crime, instruction on 'criminal negligence' is erroneous." (*Id.* at p. 110.)

In this case, the Attorney General contends that the modified accident instruction, including the "culpable negligence" language, was a correct statement of the law. The Attorney General contends that *Lara* is distinguishable because in that case, the trial court had included "criminal negligence" in both its instruction on the accident defense and in an instruction on the required mental state for the charged offense. (See *Lara, supra,* 44 Cal.App.4th at p. 106.) The Attorney General notes that here, no such additional instruction was given. The Attorney General points out that in the present case, the trial court correctly instructed the jury on the required intent for the assault counts pursuant to CALCRIM No. 860 and correctly instructed the jury on general criminal intent pursuant to CALCRIM No. 252.

The cases cited by the Attorney General are inapposite. *People v. Lawson* (2013) 215 Cal.App.4th 108 involved the mistake of fact defense, not the accident defense. In *People v. King* (2006) 38 Cal.4th 617, the question was whether a weapon possession offense required any mental state or whether it was a strict liability offense. (See *id.* at p. 622.) In *People v. Jennings* (2010) 50 Cal.4th 616, the defendant was charged with involuntary manslaughter, which (as explained in *Lara*) can be committed when the defendant's mental state is merely criminal negligence. In *People v. Thurmond* (1985)

---

[3] With a citation to *Lara,* the "Use Note" to CALJIC No. 4.45 now states: "If the crime charged can only be committed with general or specific intent, do not instruct on criminal negligence. [Citation.]"

12

175 Cal.App.3d 865 and *People v. Brucker* (1983) 148 Cal.App.3d 230, the issue was whether the trial court had a sua sponte duty to provide a definition of "culpable negligence," but neither of those cases considered whether "culpable negligence" should be included in an instruction on accident when the charged crime requires general criminal intent.

Based on the reasoning of *Lara*, we conclude that the trial court erred by adding the "culpable negligence" language to the instruction on the accident defense because culpable negligence is a lower mental state than general criminal intent, which is required for assault with a deadly weapon on a peace officer. (See *Lara, supra,* 44 Cal.App.4th at p. 108.) Thus, the accident defense instruction should not have included the term "culpable negligence." We proceed to consider whether to assess the effect of the instructional error as a matter of state law or under the federal constitution.[4]

### 3. Prejudice

Defendant contends the instructional error violated her right to a jury trial and her right to present a defense under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, such that we should review the effect of the error under *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*). The Attorney General contends that an error involving failure to instruct on an affirmative defense is an error of state law only and is reviewed under *People v. Watson* (1956) 46 Cal.2d 818.

We will assume that a court's misinstruction on an element of a defense is akin to a court's misinstruction on an element of an offense, which is subject to harmless error review under the beyond-a-reasonable-doubt standard of *Chapman, supra,* 386 U.S. 18. (See *People v. Flood* (1998) 18 Cal.4th 470, 502-503; see also *People v. Lee* (1987)

---

[4] We do not reach the question of whether the trial court separately erred by responding to the jury's request for definitions of the terms "culpable" and "culpable negligence." As defendant acknowledges, the jury would not have asked for definitions of those terms but for their inclusion in the modified instruction.

13

43 Cal.3d 666, 674 [*Chapman* standard applies where "conflicting instructions" on the mental state element of an alleged offense can act to "remove the intent issue from the jury's consideration"].) Under the *Chapman* standard, an error is harmless only if we can declare "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." (*Chapman, supra,* at p. 24.) "To say that an error did not contribute to the verdict is, rather, to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record." (*Yates v. Evatt* (1991) 500 U.S. 391, 403 disapproved on another ground by *Estelle v. McGuire* (1991) 502 U.S. 62, 73, fn. 4.)

In determining whether an instructional error was harmless, "relevant inquiries are whether 'the factual question posed by the [erroneous] instruction necessarily was resolved adversely to the defendant under other, properly given instructions' [citation] and whether the 'defendant effectively conceded the issue' [citation]. A reviewing court considers 'the specific language challenged, the instructions as a whole[,] the jury's findings' [citation], and counsel's closing arguments to determine whether the instructional error 'would have misled a reasonable jury. . .' [citation]." (*People v. Eid* (2010) 187 Cal.App.4th 859, 883 (*Eid*).)

Defendant contends the instructional error was prejudicial because her state of mind at the time of the alleged assault was the only disputed issue at trial, and the error directly affected that issue, on which there was conflicting evidence. (See *Lara, supra,* 44 Cal.App.4th at p. 110 [the defendant's "state of mind, i.e., whether he acted with general intent or not, was the key issue in the case"].) Defendant also argues that the prosecutor capitalized on the instructional error by telling the jury that the accident defense did not apply if defendant "create[d] the situation." Further, defendant contends, the trial court's instructions on the definitions of "culpable" and "culpable negligence" encouraged the jury to apply the wrong standard, and the jury's request for definitions of those terms strongly indicates that the jury focused on the erroneous instruction during

14

deliberations. Defendant additionally asserts that the case was close on the issue of whether she was guilty of the assaults.

The Attorney General contends any error was harmless, for four reasons. First, the Attorney General contends that the mental state for assault "is 'a species of negligent conduct,' " such that the "culpable negligence" standard would not have made a difference. Second, the Attorney General contends that even if the instruction allowed the jury to apply the wrong standard of intent for assault, the evidence that defendant acted with general criminal intent was overwhelming. Third, the Attorney General argues that defendant was not credible in claiming that the collision was the result of an accidental act. Fourth, the Attorney General contends the other, proper instructions rendered any error harmless.

We conclude that on this record, the instructional error was not harmless beyond a reasonable doubt. We acknowledge that the elements of the assault charges were fully and accurately set out for the jury in other instructions. (See *Eid, supra,* 187 Cal.App.4th at p. 883.) For instance, the trial court properly instructed the jury that defendant was not guilty of assault with a peace officer unless she willfully "did an act with a deadly weapon other than a firearm that, by its nature, would directly and probably result in the application of force to a person" and unless defendant "was aware of facts that would lead a reasonable person to realize her act, by its nature, would directly and probably result in the application of force to someone." (See CALCRIM No. 860.) The trial court also properly instructed the jury that defendant could not be convicted of assault on a peace officer unless she acted with "general criminal intent," meaning that the jury had to find defendant intentionally did "a prohibited act." (See CALCRIM No. 252.)

However, the fact that the jury did receive proper instructions on assault does not mean that the jury necessarily resolved the factual question posed by the erroneous "culpable negligence" instruction under the properly given assault instructions. (See *Eid, supra,* 187 Cal.App.4th at p. 883.) And here, although defendant's trial counsel did not

15

explicitly mention the accident defense during argument to the jury, defendant did not " 'effectively concede[] the issue.' " (*Ibid.*) Indeed, the issue of defendant's intent was essentially the only issue that the jury had to decide, and the evidence did not overwhelmingly establish that defendant had the requisite "actual knowledge of those facts sufficient to establish that the act by its nature [would] probably and directly result in the application of physical force against another." (*People v. Williams* (2001) 26 Cal.4th 779, 790 (*Williams*).)

The accident defense was supported by the evidence, including defendant's conduct and her statements immediately after the incident. Defendant had been trying to flee from the police, and her BMW had come to a stop and then backed up past the patrol vehicle. Defendant began driving forward and to the right—at the same time that the officers began exiting their patrol vehicle—in a manner that could have been consistent with an attempt to go around the patrol vehicle. Upon her arrest, defendant asserted that she "didn't mean to" hit Officer Evans and that she was "trying to go around" the officers. The evidence showed that defendant did turn right and that she continued trying to evade the officers, just as she had been doing prior to her vehicle striking the patrol vehicle's door. The evidence further established that the incident occurred "[v]ery quick[ly]"—Officer Weagle estimated that the BMW struck the patrol vehicle's door only five seconds after the officers stopped their vehicle. A reasonable juror could have concluded that defendant may not have seen Officer Evans open the patrol vehicle's door and step out before she engaged in the act of trying to drive around the patrol vehicle in order to get away and thus that defendant was not "aware of the facts that would lead a reasonable person to realize that a battery would directly, naturally and probably result from h[er] conduct." (See *Williams, supra,* 26 Cal.4th at p. 788.)

Finally, the jury's request for further instruction on the meaning of the terms "culpable" and "culpable negligence" strongly indicated that the jury was considering the accident defense and specifically whether defendant acted with "culpable negligence."

16

(See *People v. Rodriguez* (1999) 69 Cal.App.4th 341, 352 [record affirmatively suggested the jury relied on erroneous instruction where, during deliberations, the jury asked the trial court about the meaning of improperly included term].)

In sum, on this record, we conclude that the instructional error involving the term "culpable negligence" could have " 'misled a reasonable jury' " (*Eid, supra,* 187 Cal.App.4th at p. 883) into applying a lower mental state than general criminal intent when deciding whether defendant was guilty of the two counts of assault on a peace officer. (See *Lara, supra,* 44 Cal.App.4th at p. 108.) We cannot conclude, beyond a reasonable doubt, that the instructional error "did not contribute to the verdict obtained." (*Chapman, supra,* 386 U.S. at p. 24.)

## IV.    DISPOSITION

The judgment is reversed. The matter is remanded for retrial on both counts of assault with a deadly weapon on a peace officer (Pen. Code, § 245, subd. (c); counts 1 & 2).

_____

BAMATTRE-MANOUKIAN, J.

WE CONCUR:

_____

ELIA, ACTING P.J.

_____

MIHARA, J.