Filed 2/2/16  P. v. Garner CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E062231 |
| v. | (Super.Ct.No. RIF1400003) |
| TOM J. GARNER, JR., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Charles J. Koosed, Judge.

Affirmed.

Christian C. Buckley, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Alana C. Butler, and Stephanie H. Chow, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Tom J. Garner, Jr., punched his former fiancé in the eye.  When, months later, the victim's injury still had not healed, she sought a second medical opinion

and underwent corrective surgery for a fractured orbital bone. The jury convicted defendant of inflicting corporal injury on a cohabitant (Pen. Code, § 273.5, subd. (a))[1] and found true the allegation that he personally inflicted great bodily injury (§ 12022.7, subd. (e)).[2]

Defendant challenges his conviction for the great bodily injury enhancement on two grounds. First, he contends the instruction for the corporal injury count likely caused the jury to believe that the great bodily injury enhancement required only proximate causation, rather than direct causation. Second, he contends there was insufficient evidence that the victim's broken bone constituted great bodily injury and that he broke her bone. We disagree with both contentions and affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Incident*

The victim testified that, in the fall of 2015, she was engaged to defendant and he was living in her home with her two sons. In the middle of the night on September 29, 2013, defendant pulled the victim out of bed to continue an argument they had been having earlier that day. Defendant accused her of cheating on him and began looking through her phone and smelling her underwear. Defendant held his fist in front of the

---

[1]  All statutory references are to the Penal Code.

[2]  Defendant was also charged with two counts of assault with a deadly weapon, but the prosecution dismissed one of the counts before trial and the jury acquitted defendant of the other count.

victim's face, and she asked him if he was going to hit her. Defendant responded, "You think you're tough" and punched her in the left eye. The punch knocked the victim to the ground. She began to bleed and could feel her eye starting to swell. It was hard for her to breathe, but she cried out for ice and said she needed to go to the hospital. She remembers that someone brought her ice and that defendant was begging her not to call the police. Defendant told her he would go to counseling if she promised not to call the police.

John Doe No. 2, the victim's 16-year-old son, testified he woke up that night from hearing defendant and his mother arguing. He heard a smack and his mother called out to him for help. When he got to her bedroom she was curled up on the bed, covering her face. She was crying and asked him to call the police. Defendant looked nervous and told John Doe No. 2 that he had hit the victim in self-defense. John Doe No. 2 did not call 911 because he did not want to be in the same house as defendant while they were waiting for the police to arrive.

John Doe No. 1, the victim's 12-year-old son, testified he heard his mother scream in the middle of the night. He went to her bedroom door and saw defendant standing in the doorway. His mother was crying and shouting, "My eye." John Doe No. 1 brought her ice and went back to his bedroom because he was scared. The next day, his mother wore sunglasses around the house.

B.    *The Injury*

The victim went to work the next day wearing sunglasses but she was sent home because of her injury.  That same day, she took a photograph of her eye, which the prosecution showed the jury.  In the photograph, the victim's left eye is bruised and swollen shut.

The victim testified she spent the next few weeks at home in bed and in pain.  At the end of the two weeks, she was still having headaches and a sharp pain behind her eye.  She testified that it felt like her "skull [was] stretching out or stretching in."

Defendant refused to take her to the emergency room, so the victim walked there one day in mid-October 2013.  At that point, she was still trying to cover for defendant, so she told the doctor she had been hit by a football.  The doctor visually examined her eye and checked her pupil pressure.  The doctor diagnosed the victim with a contusion and traumatic mydriasis, and gave her a prescription for Vicodin.  The victim did not receive any x-rays or CAT scans during that hospital visit.

Shortly thereafter, the victim ended her relationship with defendant and reported the incident to the police.  On January 1, 2014, the victim moved to Texas.  She was still feeling a sharp pain in her left eye, so she went to a hospital in Texas for a second opinion.  An x-ray revealed she had a broken orbital bone, and the doctors recommended corrective surgery.  The victim underwent surgery in February 2014.  Afterward, the doctors told her that her eye was still about a "millimeter off" and if it got worse they

would consider another surgery. At the time of trial, the victim's left eye visibly sagged below her right eye.

C.     *Defense Case*

Defendant's friend testified that the victim often started arguments with defendant. The friend was staying at the victim's house on the night of the incident. He did not hear a smacking noise, but he did hear the victim call to her son for help. The next morning, he did not see any injury on the victim's face.

Another one of defendant's friends testified that he was at the victim's house in September or October 2013, and heard the victim arguing with defendant in the bedroom. He claimed not to have seen anything and denied telling an investigator before trial that he heard the victim say, "He hit me."

Defendant's cousin testified that the victim was a possessive girlfriend, who often yelled at defendant. He saw the victim in mid-October and did not see any injury on her face. Defendant's mother testified that the victim had called her near the end of October and promised that she would drop all charges if defendant got back together with her.

Dr. Ryan O'Connor, an emergency medical physician, reviewed the victim's medical records. He testified that a "contusion" is swelling or bruising, a "traumatic mydriasis" is an enlarged pupil dilation, and an "orbital floor fracture" is a fracture to a bone at the bottom of the eye socket, typically caused by the buildup of pressure from injury to the eyeball. He opined that the emergency room physician would not have made any other diagnoses that were not listed on the victim's records.

## II

## DISCUSSION

A. *The Great Bodily Injury Enhancement Instruction Was Proper*

 1. *Background*

The court instructed the jury that the corporal injury count required a finding that defendant willfully and unlawfully "inflicted a physical injury" on his former cohabitant that resulted in a traumatic condition.  The court instructed the jury that causation for a traumatic condition is satisfied if:

> "1.  The traumatic condition was the natural and probable consequence of the injury;

> 2.  The injury was a direct and substantial factor in causing the condition;

> AND

> 3.  The condition would not have happened without the injury.

> "A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes.  In deciding whether a consequence is natural and probable, consider all of the circumstances established by the evidence.

> "A substantial factor is more than a trivial or remote factor.  However, it does not need to be the only factor that resulted in the traumatic condition."

The court then instructed the jury regarding the great bodily injury enhancement as follows:

"If you find the defendant guilty of the crime charged in Count 1, you must then decide whether the People have proved the additional allegation that the defendant personally inflicted great bodily injury on [the victim] during the commission of that crime, under circumstances involving domestic violence."

>            2.      *Analysis*

Defendant contends that the instruction for the corporal injury count likely caused the jury to believe that proximate causation, as opposed to direct causation, was sufficient to support a true finding on the great bodily injury enhancement.  Defendant does not contend either of the instructions was legally incomplete or incorrect.  Rather, the gravamen of his challenge is that the trial court should have "additionally instructed that the proximate cause portion of [the corporal injury count instruction] did not apply to the section 12022.7 enhancement."  As a threshold matter, defendant forfeited this challenge by failing to object or request a clarifying instruction.  (See, e.g., *People v. Livingston* (2012) 53 Cal.4th 1145, 1165.)  In any event, defendant's argument fails on the merits because neither instruction was erroneous or prejudicial.

" 'An appellate court reviews the wording of a jury instruction de novo and assesses whether the instruction accurately states the law.'  [Citation.]  ' " '[T]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction.' " ' "  (*People v. Acosta* (2014) 226 Cal.App.4th 108, 119.)  Jury instructions are flawed only if, after taking into account the instructions as a whole and the trial record, there is a

reasonable likelihood the jury misconstrued or misapplied the words of the instruction. (*Ibid.*; *People v. King* (2010) 183 Cal.App.4th 1281, 1316.) " 'We presume that jurors are intelligent and capable of correctly understanding, correlating, applying, and following the court's instructions.' " (*People v. Acosta*, *supra*, at p. 119.)

Here, each instruction correctly stated the law. The instruction for the corporal injury count provided that defendant's acts must be, at the very least, the "proximate cause" of the injury. The instruction for the great bodily injury enhancement provided that defendant must "personally" inflict the injury. We disagree with defendant that it is likely the jury applied the proximate cause requirement for the charged offense to the enhancement. The word "personally" in the enhancement instruction logically conveys the idea that, in order for the enhancement allegation to be true, the jury must find defendant himself performed the act that caused the physical injury. (See *People v. Cole* (1982) 31 Cal.3d 568, 579 [as used in the § 12022.7 enhancement, "[p]ersonally" was intended to "limit the category of persons subject to the enhancement to those who directly perform the act that causes the physical injury to the victim"].) Thus, because the enhancement instruction contained the word "personally," an additional instruction stating that the proximate causation language in the corporal injury count instruction did not apply to the enhancement would be superfluous and therefore unnecessary.

There is no reason to think a jury would import causation language from one instruction into a separate instruction, especially where, as here, that separate instruction contains its own causation language. To conclude otherwise would effectively require

trial courts to instruct the jury that the definitions and elements in each instruction apply only to that instruction and to no other. Common sense obviates the need for such a requirement.

Moreover, defendant's reliance on *People v. Rodriquez* (1999) 69 Cal.App.4th 341 is misplaced, as that case involves a differently worded instruction for the great bodily injury enhancement. In *Rodriguez*, the instruction was erroneous because it used the "standard definition of proximate cause" as the type of causation required for the enhancement. (*Id.* at p. 347.) Significantly, the enhancement instruction at issue here did not contain any proximate causation language to confuse the jury. The proximate causation language about which defendant complains was used in a *separate* instruction, given immediately before the enhancement instruction. This language did not impute a proximate cause requirement to the enhancement instruction. We assume the jury understood that separate instructions are just that—separate.

Finally, even if the failure to give a clarifying instruction were error, which it is not, such error would be harmless in light of the overwhelming evidence that defendant directly caused the victim's injury. (See, e.g., *People v. Mil* (2012) 53 Cal.4th 400, 417-419.) The prosecution presented strong evidence that defendant punched the victim in the left eye and that this one act caused the fracture of her orbital bone. The victim described the punch, and her two sons testified that their mother was covering her eye when they came to her room upon hearing her scream in pain. One of the sons heard a smacking noise and testified that defendant admitted he had hit the victim, albeit in self-

defense. In comparison, the defense theory was that the victim fabricated the incident and defendant did not inflict any injury on her.

The prosecution's evidence was stronger than the defense's theory because it was supported by the testimony of multiple eyewitnesses. In contrast, there was no evidence the victim's injury was caused by anything other than defendant punching her. Thus, even if the court had given an additional instruction stating that defendant must be the direct, not proximate, cause of the victim's injury, it is unlikely the result would have been different.

B.  *Sufficient Evidence Supports the Finding that Defendant Personally Inflicted Great Bodily Injury*

Defendant argues the enhancement should be reversed because there was insufficient evidence that the victim's fracture constituted great bodily injury and that he caused the fracture. We find substantial evidence supports the jury's finding.

"To determine the sufficiency of the evidence to support a conviction, an appellate court reviews the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Jurado* (2006) 38 Cal.4th 72, 118.) All conflicts of evidence are resolved in favor of the judgment and all reasonable inferences are drawn in its favor. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.) " ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment." ' "

(*People v. Burney* (2009) 47 Cal.4th 203, 253.) In other words, reversal is unwarranted "unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' " (*People v. Sanchez* (2003) 113 Cal.App.4th 325, 329, quoting *People v. Bolin* (1998) 18 Cal.4th 297, 331.)

Great bodily injury is defined as "a significant or substantial physical injury." (§ 12022.7, subd. (f).) The definition "contains no specific requirement that the victim suffer 'permanent,' 'prolonged' or 'protracted' disfigurement, impairment, or loss of bodily function." (*People v. Escobar* (1992) 3 Cal.4th 740, 750.) " ' "Whether the harm resulting to the victim . . . constitutes great bodily injury is a question of fact for the jury. [Citation.] If there is sufficient evidence to sustain the jury's finding of great bodily injury, we are bound to accept it, even though the circumstances might reasonably be reconciled with a contrary finding." ' " (*Ibid.*)

The victim testified that she suffered pain immediately after defendant punched her and that she continued to suffer headaches and a sharp pain behind her eye for over three months, until she was diagnosed with a fractured orbital bone and underwent corrective surgery. The prosecution showed the jury photographs of the victim taken prior to the incident to demonstrate that, by the time of trial, her left eye sagged and had not returned to its original condition. Additionally, the victim testified that she may require additional surgery.

Defendant makes much of the victim's initial emergency room diagnosis and the fact that she was simply "sent home with pain killers." Such an argument is unpersuasive

because our task on review is to determine whether sufficient evidence supports the jury's finding of great bodily injury, not whether the "circumstances might reasonably be reconciled with a contrary finding." (*People v. Escobar*, *supra*, 3 Cal.4th at p. 750.) Based on the victim's and Dr. O'Connor's testimony, the jury could reasonably find either that the emergency room physician failed to detect the fracture (possibly due to the victim's downplaying the cause of the injury) or that the victim's orbital bone was not yet broken because the pressure in her eye socket caused by defendant's punch had not yet increased to the point to cause a fracture. That the emergency room physician did not detect the fracture does not require a conclusion that the fracture did not then exist or was not caused by defendant.

Defendant next argues there was insufficient evidence that he caused the fracture. Defendant concedes he punched the victim, but asserts that "the reasonable conclusion is that the fracture occurred sometime after [the victim] was seen in the Riverside emergency room." Again, defendant places too much emphasis on the emergency room diagnosis. Defendant is unable to identify any evidence to support a finding that the fracture was caused by something other than his punch. Instead, the evidence supports a finding that the full extent of the victim's injury was not detected or had not yet occurred when she visited the emergency room.

We conclude the record supports defendant's conviction for the great bodily injury enhancement.

## III

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON

J.

We concur:

RAMIREZ
P. J.

McKINSTER
J.