Filed 3/14/16  P. v. Salgado CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>OCTAVIO ESPINOZA SALGADO,<br><br>    Defendant and Appellant. | 2d Crim. No. B257769<br>(Super. Ct. No. 2012017400)<br>(Ventura County) |

Octavio Espinoza Salgado appeals a judgment following conviction of battery with injury upon a police officer (count 1), and resisting a police officer (count 3), with findings that he personally inflicted great bodily injury during commission of the crimes, suffered a prior serious felony and strike conviction, and served two prior prison terms.  (Pen. Code, §§ 243, subd. (c)(2), 69, subd. (a), 12022.7, subd. (a), 667, subd. (a), 667, subds. (b)-(i), 1170.12, subds. (a)-(d), 667.5, subd. (b).)[1]  We affirm.

### *FACTUAL AND PROCEDURAL HISTORY*

On May 12, 2012, Superior Groceries in Oxnard celebrated its anniversary with food, beverages, live music, and prizes in the store parking lot.  Hundreds of people attended and a private security company provided security.

A security guard informed Jorge Medina, a store employee, that Salgado appeared to be under the influence of drugs or medication.  The guard stated that Salgado

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

was not harming anyone, but the guard wanted to "make sure . . . the customers [are] safe."  He recommended that Medina telephone the police.  Medina looked for Salgado in the crowd and saw that Salgado was "flipping around," "looking around," and "running around."  Medina telephoned the police emergency dispatcher and stated that Salgado appeared to be "on drugs."

Oxnard Police Officer Mike Cole responded to the dispatch call of a tall Hispanic male wearing a black shirt who was possibly under the influence and disturbing others.  Cole noticed Salgado immediately; Salgado appeared to be "highly agitated," and "possibly under the influence" or having "[a] psychotic breakdown."  The security guard informed Cole that he had received complaints that Salgado was threatening patrons and children.

Salgado "locked his gaze" on Cole and became more agitated.  He "dropped his body weight" and began to look around "more vigorously."  Cole walked toward Salgado and beckoned him with a hand gesture.  Salgado shook his head.  As Cole approached, Salgado said "No," four times.  Salgado then walked away; Cole walked alongside Salgado and grabbed his wrist.  Cole asked Salgado to accompany him and speak with him.  Salgado did not answer and began walking faster.  Cole then unsuccessfully attempted a wrist-lock hold on Salgado.  Salgado balled his left hand into a fist and moved toward Cole.  Cole believed that Salgado might either strike him or knock him to the ground.

Cole swept Salgado's legs from under him and Salgado fell.  Cole was on top of Salgado attempting to turn him over to handcuff him.  Cole heard the unlatching of the hood to his service weapon as he struggled with Salgado.  He relatched the weapon hood and then noticed that his lapel microphone was dislodged.  Cole retrieved the microphone and called for additional police officers, despite Salgado's efforts to stop him.  Criminal analysis later determined that the lapel microphone contained Salgado's DNA.

2

Salgado then struck Cole with his head and attempted to bite him. Cole decided to end the confrontation by punching Salgado in the face. He struck Salgado three times and Salgado fell unconscious. A second police officer arrived and together they handcuffed Salgado.

Salgado was treated at a local hospital for facial fractures and trauma. He was combative at the hospital. A toxicology test revealed benzodiazepine and amphetamine in Salgado's blood.

Cole suffered back trauma from the altercation with Salgado. One year following the incident, he underwent hip surgery to treat the injury and alleviate pain. Cole returned to patrol duty in November 2013, but continues to suffer back pain.

At trial, the prosecutor presented evidence of Salgado's 2007 battery conviction against three peace officers, and his 2011 conviction for resisting a police officer and being under the influence of a controlled substance. The prosecutor presented evidence of the 2007 conviction by stipulation, and the 2011 conviction by testimony and stipulation. The latter conviction involved Salgado forcibly entering a stranger's home and yelling into a cellular telephone. During the incident, Salgado spoke unintelligibly, refused to leave the residence, and was tased and arrested by six sheriff's deputies.

The jury convicted Salgado of battery with injury upon a police officer, and resisting a police officer, and found that he personally inflicted great bodily injury during commission of the crimes. (§§ 243, subd. (c)(2), 69, subd. (a), 12022.7, subd. (a).) In a separate proceeding, the jury found that Salgado suffered a prior serious felony and strike conviction, and served two prior prison terms. (§§ 667, subd. (a), 667, subds. (b)-(i), 1170.12, subds. (a)-(d), 667.5, subd. (b).)

The trial court sentenced Salgado to a 16-year prison sentence, consisting of an upper three-year term (doubled) for count 1, plus three years for the great bodily injury allegation, five years for the prior serious felony conviction, and two years for the two prior prison term allegations, all to be served consecutively. The court imposed but stayed the same sentence for count 3. It also imposed a $1,000 restitution fine, a $1,000

3

parole revocation restitution fine (suspended), a $1,721 probation investigation fee, a $80 court security assessment, and a $60 criminal conviction assessment; ordered victim restitution; and awarded Salgado 696 days of presentence custody credit. (§§ 1202.4, subd. (b), 1202.45, 1203.1b, 1465.8, subd. (a); Gov. Code, § 70373.)

Salgado appeals and contends that: 1) insufficient evidence supports the finding that Cole was engaged in the lawful performance of his duties when he detained him; 2) the trial court failed to instruct that probable cause is necessary to detain pursuant to Welfare and Institutions Code section 5150; 3) the trial court prejudicially abused its discretion by permitting evidence of his prior crimes; 4) insufficient evidence exists that he personally inflicted great bodily injury upon Cole; and 5) the trial court abused its discretion by ordering physical restraints.

*DISCUSSION*

*I.*

Salgado argues that there is insufficient evidence that Cole was engaged in the lawful performance of his duties because his detention was unlawful pursuant to the Fourth Amendment.

The Fourth Amendment protects against unreasonable searches and seizures. (U.S. Const., 4th Amend.; *Navarette v. California* (2014) – U.S. -, - [134 S.Ct. 1683, 1687]; *People v. Suff* (2014) 58 Cal.4th 1013, 1053-1054.) A detention is reasonable pursuant to the Fourth Amendment when the detaining officer can point to specific articulable facts that, in light of the totality of circumstances, provide some objective manifestation that the person detained may be involved in criminal activity. (*Navarette*, at p. 1687; *Suff*, at pp. 1053-1054.)

A reasonable suspicion of criminal activity requires less information than a finding of probable cause. (*Navarette v. California*, *supra*, - U.S. -, - [134 S.Ct. 1683, 1687]; *People v. Wells* (2006) 38 Cal.4th 1078, 1083.) "[T]he level of suspicion the standard requires is 'considerably less than proof of wrongdoing by a preponderance of the evidence,' and 'obviously less' than is necessary for probable cause." (*Navarette*, at

4

p. 1687.)  Law enforcement may base a finding of reasonable suspicion on its observations together with information from other sources, including an anonymous tip. (*Wells*, at p. 1083.)   "The standard takes into account 'the totality of the circumstances—the whole picture.'" (*Navarette*, at p. 1687.)  This standard necessarily precludes a "divide-and-conquer" analysis.  (*U.S. v. Arvizu* (2002) 534 U.S. 266, 274.)

Cole lawfully detained Salgado based upon his observations and the information provided by the security guard and store employee.  The 911 telephone call indicated that Salgado may have been under the influence of drugs.  Cole's observations disclosed an unusually large man behaving in an agitated and paranoid manner.  He crouched his body when he saw Cole watching him.  The security guard informed Cole that Salgado may have threatened patrons and children and that the guards had received complaints regarding Salgado.  Salgado refused to speak to Cole and walked away when Cole asked that they speak in an area away from the parking lot event.  Salgado's behavior and demeanor are consistent with a person under the influence of drugs or experiencing a mental health crisis.  The totality of the circumstances provided sufficient reasonable cause to detain Salgado to determine if he was under the influence of drugs or suffering a mental health crisis.  Salgado's detention was lawful and consistent with Fourth Amendment constitutional principles.

*II.*

Salgado contends that the trial court erred by not instructing that a detention pursuant to Welfare and Institutions Code section 5150 ["Taking Into Custody Dangerous or Gravely Disabled Persons"] requires probable cause.[2]  (*Id.*, subd. (a).)  He claims that the omission prevented the jury from considering his defense and denied him due process of law, the right to present a defense, and the right to a jury trial.  Salgado points out that when the jury requested to read the statute, the court replied that the statute was long and complicated, but that for purposes of the trial, section 5150 empowered a peace officer to

---

[2] For purposes of Part II of this opinion, all statutory references are to the Welfare and Institutions Code.

5

take a person into custody when that person presented a danger to himself or others by reason of his mental illness.

The trial court did not err because Salgado did not request amplifying or clarifying instructions if section 5150 was indeed his defense. The court properly instructed that a police officer's lawful duties include "assisting those with mental illness." During his testimony, Cole briefly mentioned section 5150. Salgado did not rely upon the lack of probable cause and section 5150 as a defense at trial. He also did not object to the court's response to the jury question regarding the statute. The contention is forfeited. (*People v. Livingston* (2012) 53 Cal.4th 1145, 1165 [general rule]; *People v. Castaneda* (2011) 51 Cal.4th 1292, 1348 [same].)

*III.*

Salgado claims that the trial court abused its discretion by admitting evidence of his prior crimes pursuant to Evidence Code sections 1101, subdivision (b), and 352. (*People v. Hendrix* (2013) 214 Cal.App.4th 216 [prior crimes of resisting police officers inadmissible to prove knowledge or absence of mistake in current prosecution].) Salgado's prior crimes were a 2007 conviction (by plea) for battery on a peace officer, and a 2011 conviction (by plea) for resisting an arrest that involved six police officers. Salgado asserts that the prior crimes were dissimilar to the present charged crimes because the circumstances of the charged crimes involved him "minding his own business at a public event." He argues that the prior crimes evidence was unduly prejudicial. (Evid. Code, § 352.)

The "guiding principles" of prior crimes evidence are set forth in *People v. Rogers* (2013) 57 Cal.4th 296, 325-326. Evidence of other crimes is not admissible to prove bad character or criminal disposition. The evidence is admissible, however, to prove, among other things, identity of a perpetrator, the existence of a common design or plan, or the intent with which the perpetrator acted in the commission of the charged crimes. (*Ibid.*) The prior crimes and the currently charged crimes must be sufficiently

6

similar to support a rational inference of identity, common design or plan, or intent.  (*Id.* at p. 326.)  The least degree of similarity is required to establish intent.  (*Ibid.*)

If the evidence of prior crimes is sufficiently similar to the charged crimes, the trial court must consider whether the probative value of the evidence is substantially outweighed by the probability that its admission would create substantial danger of undue prejudice, confusing the issues, or misleading the jury.  (Evid. Code, § 352; *People v. Rogers*, *supra*, 57 Cal.4th 296, 326.)  Evidence is substantially more prejudicial than probative if it poses an intolerable risk to the fairness of the proceeding or the reliability of the outcome.  (*People v. Edwards* (2013) 57 Cal.4th 658, 713.)  We review the trial court's ruling regarding Evidence Code section 352 for an abuse of discretion.  (*Rogers*, at p. 326.)

The trial court did not abuse its discretion by admitting evidence of the 2007 and 2011 convictions as relevant to Salgado's knowledge that Cole was acting lawfully in the performance of his official duties.  (§§ 69, subd. (a), 243, subd. (c)(2); *People v. Hendrix*, *supra*, 214 Cal.App.4th 216, 237 [section 69 requires actual knowledge by the defendant that the person being resisted is an executive officer performing his official duty].)  The prior crimes established that Salgado previously had encountered police officers and knew that they had issued commands.  For most people, this may be "commonly held knowledge," but apparently not for Salgado.  (*Hendrix*, at p. 239.)  Salgado's guilty pleas to the prior crimes admitted each element of the crimes, including that the officers were acting lawfully in the performance of their duties.  The prior crimes reflected sufficient material similarity to establish Salgado's intent in committing the charged crimes, i.e., Salgado committed battery or resisted a police officer or officers who had issued commands.

The trial court also did not abuse its discretion by ruling that the prior crimes evidence was not unduly prejudicial.  (*People v. Suff*, *supra*, 58 Cal.4th 1013, 1066 [standard of review regarding trial court's ruling pursuant to Evidence Code section 352].)  The prior crimes evidence was no more inflammatory than the evidence regarding

7

the charged offenses, thereby decreasing the possibility of undue prejudice. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 405, superseded by statute on other grounds as stated in *People v. Robertson* (2012) 208 Cal.App.4th 965, 991.)

*People v. Hendrix*, *supra*, 214 Cal.App.4th 216, does not assist Salgado. In *Hendrix*, a divided court concluded that evidence of prior acts of resisting a police officer was inadmissible to prove knowledge or mistake in defendant's current prosecution for resisting a police officer, in part, because defendant believed that he was resisting a security guard. (*Id.* at p. 243.) *Hendrix* also concluded that evidence of defendant's inflammatory threats to another police officer "helped tip the section 352 scales." (*Id.* at p. 234.) *Hendrix* is thus distinguishable from the circumstances here.

*IV.*

Salgado argues that insufficient evidence supports the finding that he personally inflicted great bodily injury on Cole. (§ 12022.7, subd. (a) ["[a]ny person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony shall be punished . . . ."].) He claims that Cole's act of "tackling" him, causing both men to fall, caused Cole's hip injury.

Salgado also asserts that the trial court misdirected the jury regarding causation when the court responded to a jury question regarding finding "a direct cause and effect relationship between a specific action by the defendant and [Cole's] injury." He claims that the response "No" permitted the jury to find an indirect causal relationship, i.e., proximate causation of Cole's injury. (*People v. Rodriguez* (1999) 69 Cal.App.4th 341, 347-348 [section 12022.7, subdivision (a) requires direct personal causation of an injury, not proximate causation].)

Sufficient evidence and all reasonable inferences therefrom support the finding of personal infliction of great bodily injury. (*People v. Johnson* (2015) 60 Cal.4th 966, 988 [standard of review of insufficient evidence claim].) Witness Otto Brill testified that Salgado "got violent [and] pushed away" from Cole and "was fighting" Cole as Cole attempted to escort him through the crowd. Security Guard Otis Wimberly

8

testified that Salgado "attacked [Cole]" and Cole "swept him to the ground." They were "struggling" and "tussling" and both fell to the ground.

*People v. Rodriguez*, *supra*, 69 Cal.App.4th 341, is distinguishable. There, the defendant's action did not directly cause the police officer's injury; the officer struck his head on the sidewalk or a lamppost while tackling the defendant, who had been attempting to escape on a bicycle. (*Id.* at p. 346.) Defendant Rodriguez did not struggle or initiate any contact with the officer during the incident. Instead, the officer injured himself when he tackled the defendant. (*Id.* at p. 352.) Thus, there was evidence of proximate causation of the officer's head injury, but not direct personal infliction of injury by the defendant. (*Ibid.*)

The trial court properly instructed with CALCRIM No. 3160, concerning personal infliction of great bodily injury. During the court's discussion of the jury question regarding a "specific action" by defendant that caused great bodily injury, Salgado did not request amplification or modification of the instruction. The court's discussion with counsel concerned "which punch or which hold" inflicted the great bodily injury, not whether the injury was proximately or directly caused. Salgado has forfeited his objection to the court's response to the jury. (*People v. Castaneda*, *supra*, 51 Cal.4th 1292, 1348 [general rule].)

*V.*

Salgado contends that the trial court prejudicially abused its discretion by ordering that he be physically restrained during trial. He points out that he did not threaten or engage in violence or escape attempts *in the courtroom.* Salgado asserts that the order denied him due process of law pursuant to the federal and state constitutions.

Following the prosecutor's request that Salgado be physically restrained during trial, the trial court held an evidentiary hearing. A risk assessment deputy from the Ventura County Sheriff's Department testified that, based upon Salgado's recent involvement in two jail disturbances, he was classified as the highest level of risk. As a result, Salgado was accompanied by two deputies whenever he left confinement. The

9

two jail disturbances involved Salgado and his cellmate (and other inmates as well) covering their cell windows with mattresses.[3]  In both instances, deputies resorted to application of a chemical agent to forcibly remove Salgado from his cell.  Salgado had also impliedly threatened his cellmate and informed the risk assessment deputy that he had assaulted a correctional officer who had "disrespected" him.

A courthouse security supervisor from the sheriff's department opined that, based upon Salgado's criminal record, his current classification, the pending criminal charges, and his physical build (six feet four inches tall and 250 to 310 pounds), restraints were necessary in the courtroom.  As an alternative, the security supervisor opined that four deputies could guard Salgado during trial.

Following argument by the parties, the trial court decided it was necessary to physically restrain Salgado in a waist-chain restraint chair, identical in style and upholstery to the chairs of counsel and prospective jurors.  Although the restraint chair had a bolt on the back of the chair, the court described the bolt as "inconspicuous."  The court ordered that the deputies take photographs of the chair from every perspective, and also ruled that, when the jury entered the courtroom, everyone would be already seated.

A criminal defendant may be subjected to physical restraints in the jury's presence upon a showing of a manifest need therefor.  (*People v. Williams* (2015) 61 Cal.4th 1244, 1259.)  No defendant "may be subjected, before conviction, to any more restraint than is necessary for his detention to answer the charge."  (§ 688.)  We review the trial court's decision regarding restraint for an abuse of discretion.  (*Williams*, at p. 1259; *People v. Cunningham* (2015) 61 Cal.4th 609, 631-632.)  Our Supreme Court has held that courtroom shackling, even if error, is harmless if there is no evidence that the jury saw the restraints or that the restraints impaired or prejudiced the defendant's right to testify or participate in his defense.  (*Williams*, at p. 1259; *People v. Jackson* (2014) 58 Cal.4th 724, 740-741 [we do not presume the jury viewed the restraint].)

---

[3] Salgado characterizes the jail disturbances as acts of civil disobedience.

The trial court did not abuse its discretion in ordering the restraint.  The evidence presented at the hearing revealed that Salgado, a man of large stature, had engaged in violence directed at law enforcement officers.  Although the violence did not occur inside a courtroom, the law does not require such an incident prior to a restraint order.  Salgado does not point to evidence that jurors saw his restraint or that the restraints impaired his right to testify or present a defense.  (*People v. Williams*, *supra*, 61 Cal.4th 1244, 1259.)  We do not presume such.  (*Ibid.*)

The judgment is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P.J.


We concur:



YEGAN, J.



PERREN, J.

11

Kent M. Kellegrew, Judge

Superior Court County of Ventura

_____


Maxine Weksler, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, David F. Glassman, Deputy Attorney General, for Plaintiff and Respondent.