[No. A078553. First Dist., Div. Two. Jan. 20, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSE HERRERA RODRIGUEZ, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part III. A.

342

**COUNSEL**

John A. W. Halley, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Richard Rochman and Lisa H. Ashley, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**HAERLE, J.—**

## I. INTRODUCTION

Jose Herrera Rodriguez (Rodriguez) was convicted by a jury of auto theft (Veh. Code, § 10851, subd. (a)), assault on a police officer (Pen. Code,

§ 243, subd. (c)),[1] resisting a police officer (§ 69 ) and driving with a .08 percent or more blood-alcohol level (Veh. Code, § 23152, subd. (b)). Rodriguez admitted three prior prison terms and, during a bifurcated proceeding, the jury found two prior strike convictions to be true. Rodriguez was sentenced to three concurrent terms of twenty-five years to life for the first three counts and three consecutive one-year enhancements for the prior prison terms.

Rodriguez contends the trial court made several errors when instructing the jury which mandate reversal of (1) his conviction for resisting an officer and (2) the finding that Rodriguez's prior conviction for resisting an officer resulting in bodily injury constitutes a "second strike." We hold that the second strike finding must be reversed, but affirm the judgment in all other respects.

## II. FACTS

At approximately 5:15 a.m. on September 23, 1996, a South San Francisco police officer, Robert Eastman, was dispatched to the home of Joanna Rodriguez, Rodriguez's wife, in response to a report of domestic disturbance. Ms. Rodriguez appeared upset, reported that Rodriguez had been using drugs for several days, and stated that she felt threatened by him. Eastman checked the area for Rodriguez, but did not find him. Officer Richard Amador responded to another call from the Rodriguez home at approximately 8:00 a.m. Ms. Rodriguez told Amador about Rodriguez's drug "binge," and also reported that Rodriguez entered the house in the middle of the night and was acting very aggressively. Amador had previously dealt with Rodriguez, believed that he presented a threat of violence, and decided Rodriguez should be detained. Amador advised other on-duty officers to look for and detain Rodriguez.

At approximately 9:30 a.m., Officer Sam Langi encountered Rodriguez standing on the center island of Airport Boulevard in South San Francisco, talking to passing drivers. When Rodriguez walked to a nearby Shell gas station, Langi approached in his police car and asked Rodriguez what he was doing. Rodriguez responded that he was waiting for a bus to San Francisco, but then got on the bus going southbound, away from San Francisco. Langi used his public address system and asked Rodriguez to get off the bus. Rodriguez obeyed, but walked away from Langi and ran behind the gas station. Langi pursued with his sirens activated, found Rodriguez hiding behind a trailer across the street, and told him to stop running. Rodriguez continued to run and evaded Langi. Two other officers arrived. Rodriguez

---

[1]Unless otherwise indicated, all further statutory references are to the Penal Code.

led them on a chase as he, among other things, ran back behind the gas station, attempted to climb a hill, climbed a fence, ran in and out of a bar, and then ran down the street away from the officers. At one point, an officer used his pepper spray to stop Rodriguez, but he continued to evade officers and ran back to the gas station, where Thomas Byrum was filling his truck with gas. When Byrum went inside to pay, Rodriguez jumped into the truck and sped away. Rodriguez hit a van and another truck. Police tried to follow, but Rodriguez escaped.

Officers found the stolen truck about 10 blocks away from the gas station. A bystander directed officers to a nearby construction site on San Bruno Mountain. Officer Amador, who had previously investigated the call from Rodriguez's wife, also arrived on the scene. Amador chased Rodriguez up San Bruno Mountain and told him to get on the ground. Rodriguez picked up a surveyor's stake, which was about three and a half feet long with a sharp point, and began to run toward Amador. Amador tried to defend himself and stop Rodriguez by hitting him below the knees, but Rodriguez continued to run down the hill. He then jumped into an unmarked police car where Sergeant Mike Massino attempted to stop Rodriguez, but he escaped again.

Finally, Rodriguez was restrained and arrested. After Amador put Rodriguez in the police car, he continued to struggle and, at one point, broke free from the seat belt. When Amador tried to restrain him, Rodriguez verbally threatened him. A blood sample taken from Rodriguez showed that, at the time of his arrest, his blood-alcohol level was approximately .26 percent.

### III. DISCUSSION

#### A. *Alleged Instructional Error as to Section 69**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

#### B. *Alleged Instructional Error Regarding Strike Allegation*

Rodriguez has a 1992 conviction for violating section 148.10 which provides: "Every person who willfully resists a peace officer in the discharge or attempt to discharge any duty of his or her office or employment and the willful resistance of the person proximately causes death or serious bodily injury to a peace officer, shall be punished by imprisonment in the state prison for two, three, or four years, or a fine of not less than one thousand dollars ($1,000) . . . or both . . . ."

The jury found that Rodriguez's section 148.10 conviction was a "serious felony" and, therefore, constituted a second strike. (§ 1170.12, subd. (b)(1).)

*See footnote, *ante,* page 341 .

Section 1192.7, subdivision (c)(8), provides that a "felony in which the defendant personally inflicts great bodily injury on any person, other than an accomplice" is a "serious felony." Rodriguez contends the trial court erroneously instructed the jury regarding the "personally inflicts great bodily injury" requirement specified in that section.

### 1. *Background*

At trial, the prosecution used a preliminary hearing transcript to introduce the following evidence regarding Rodriguez's prior: On November 24, 1991, Rodriguez was being transported with other prisoners from a police station to a jail. He escaped custody and began running away, instigating a chase by Officer Martin. At one point during Martin's pursuit of Rodriguez, a bystander handed Rodriguez a bicycle to aid in his escape. Martin tackled Rodriguez on the bicycle and both men fell to the ground. Martin testified that during the tackle he hit his head, either on the ground, the concrete sidewalk, or the lamppost, and was knocked unconscious. Martin received medical care and testified that he experienced a tremendous amount of pain after the incident with Rodriguez. The prosecution also introduced evidence of Rodriguez's resulting conviction for resisting an officer proximately causing serious bodily injury in violation of section 148.10.

In asking the jury to decide whether Rodriguez's conviction under section 148.10 constituted a serious felony under the three strikes law, the trial court instructed the jury as follows:

"Now, a person personally inflicts injury to another when he directly performs [an] act or acts that cause the physical injury. To prove personal infliction, the People need not prove that the defendant intended to cause the great bodily injury, but only that the great bodily injury was personally inflicted as a result of the defendant's conduct. The term serious bodily injury is [*sic*], as used in Penal Code section 148.10, has obviously the same legal meaning as the term great bodily injury. Serious bodily injury may include loss of consciousness.

"Great bodily injury as used in these instructions means a significant or substantial physical injury. Minor, trivial or moderate injuries do not constitute great bodily injury. To constitute the personal infliction of great bodily injury there must be in addition to the injury an unlawful act which was a cause of such injury.

"Criminal law has its own particular way of defining cause. A cause of injury is an act that sets in motion a chain of events that proceed a direct,

natural and possible consequence of the act, the injury, and without which the injury would not occur."

The foregoing instruction is not a CALJIC instruction. Rather, it was drafted by the prosecuting attorney and submitted for the trial court's approval. The definition of "cause" set forth in the last paragraph of the instruction incorporates the definition of proximate cause from CALJIC No. 3.40. Rodriguez's attorney objected to the last paragraph of the instruction on the grounds that the prosecution had to prove personal infliction, not proximate cause, so the causation definition went beyond the meaning of personally inflict. The trial court disagreed and used the instruction as drafted by the prosecution.

As Rodriguez notes, the jury asked for clarification of the court's definition of cause. It wanted to know if "a cause of an injury that sets in motion a chain of events can also include the word 'indirect,'" and the court answered in the negative. The jury also requested a legal definition of the word "probable," and the court provided a dictionary definition: "'likely to be or become true or real as it relates to events.'" Thereafter, the jury found Rodriguez's prior constituted a strike.

## 2. *Analysis*

■ Rodriguez contends the trial court erroneously defined the second strike requirement that defendant must have personally inflicted great bodily injury. He argues that the instruction improperly equated "personally inflict" with "proximate cause" because it used the standard definition of proximate cause to define causation in this context. Rodriguez maintains that the instructional error was prejudicial, warranting reversal of the second strike finding. The People maintain the jury could not have been misled or confused about the instruction because it expressed two separate ideas to the jury: the type of act required and the type of causation required to find that there was personal infliction of great bodily injury. The People argue that the inclusion of a proximate cause definition was, at the most, unnecessary, but not error.

We reject the People's characterization of the challenged instruction as expressing two separate ideas. The instruction expressly equates "personally inflict" with "proximate cause." It tells the jury that personally inflict means to directly perform an act that *causes* injury and then expressly defines cause as proximate cause. The problem with the instruction is that the definition of cause is inaccurate in this context. To "personally inflict" an injury is to directly cause an injury, not just to proximately cause it. The instruction was

wrong because it allowed the jury to find against Rodriguez if the officer's injury was a "direct, natural and probable consequence" of Rodriguez's action, even if Rodriguez did not personally inflict the injury. Several factors discussed below support our conclusion.

First, our Supreme Court has indicated that the statutory term "personally inflict" has a distinct meaning, which is something different than proximate cause. (*People* v. *Cole* (1982) 31 Cal.3d 568 [183 Cal.Rptr. 350, 645 P.2d 1182] (*Cole*).) In *Cole,* the defendant instructed his accomplice to kill their robbery victim while he blocked the victim's escape. In sentencing the defendant, the trial court imposed an enhancement under section 12022.7, which, like the second strike allegation at issue in this case, contains the requirement that the defendant must have personally inflicted great bodily injury on a person other than an accomplice. Section 12022.7 states "[a]ny person who, with the intent to inflict such injury, personally inflicts great bodily injury on any person other than an accomplice in the commission or attempted commission of a felony shall, in addition and consecutive to the punishment prescribed for the felony . . . be punished by an additional term of three years. . . ."

The *Cole* court reversed the enhancement finding. In so doing, it focused on the fact that the defendant did not directly or personally act himself, but instead directed another person to act. The court found that, since section 12022.7 applies only to a person who "directly acted to cause the injury," a defendant cannot receive an enhanced sentence under section 12022.7 on a theory of vicarious liability. (*Cole, supra,* 31 Cal.3d at p. 572.) Since the *Cole* defendant did not strike his victim, he did not "personally inflict" injury as required by the enhancement statute. (*Id.* at p. 571.)

The *Cole* court noted that its conclusion was consistent with the legislative intent underlying section 12022.7 as evidenced by the clear and unambiguous statutory language of that section. The Legislature's "choice of the word 'personally' [in section 12022.7] necessarily excludes those who may have aided or abetted the actor directly inflicting the injury." (*Cole, supra,* 31 Cal.3d at p. 572.) The court also noted that the requirement that the defendant act "personally" was added to section 12202 in 1977. The court interpreted the amendment as "express[ing] a legislative intent to endorse a uniform, restricted definition of the class of individuals subject to the enhanced penalty for the infliction of great bodily injury, while rejecting the broad definition of the class that had been applied to the predecessor of section 12022.7." (31 Cal.3d at p. 579.)

*Cole* illustrates that the term "personally inflict" has a distinct meaning and that its use in a statute signifies a legislative intent to punish only the

actor who directly inflicts an injury. The same reasoning that led the *Cole* court to conclude that an aider and abettor does not "personally inflict" injury compels us to hold that the challenged instruction in the present case was erroneous. As already noted, that instruction specifically used the concept of proximate cause to define the "personally inflict" requirement of the second strike allegation. We think it obvious that an individual can and often does proximately cause injury without personally inflicting that injury. For instance, as noted in *Cole,* an aider and abettor of a crime can commit a direct act—affirmatively blocking a victim's exit—which proximately causes injury, but does not constitute personal infliction of an injury. (*Cole, supra,* 31 Cal.3d at p. 571.)

The People argue, and specifically contended at oral argument, that *Cole* actually supports their position that the challenged instruction was not erroneous. They interpret *Cole* as holding only that the statutory term "personally" does not extend to an aider and abettor because such an actor is not the direct perpetrator of a crime. This restrictive interpretation of *Cole* furthers the People's general claim that a requirement that a defendant "personally inflict" injury is separate from a requirement that the defendant cause injury. According to the People, *Cole* does not address the causation requirement at all.

The *Cole* court focused on the word "personally" to find the enhancement at issue in that case did not apply to an aider and abettor. However, the court expressly addressed the broader concept of personal infliction, which it described as applying to "a person who himself inflicts the injury," a "person who directly acted to cause the injury," and the "one who actually inflicts the injury." (*Cole, supra,* 31 Cal.3d at pp. 572-573.) We cannot ignore the second part of this concept which clearly pertains to causation and requires that the defendant have acted personally and directly to inflict or cause the injury. Contrary to the People's contention, personal infliction and causation are not two distinct concepts but two interrelated ones. The problem with the challenged instruction in this case is that the trial court used the wrong concept to explain the interrelationship. To "personally inflict" injury, the actor must do more than take some direct action which proximately causes injury. The defendant must directly, personally, himself inflict the injury. This fact was not explained to the jury. Rather, they were erroneously instructed that a defendant personally causes injury by proximately causing it. The jury could have found Rodriguez guilty of the second strike allegation for doing an act (fleeing on a bicycle) which proximately caused injury, without finding that he personally inflicted the injury.

Established rules of statutory construction offer a second basis for our conclusion that the challenged jury instruction was erroneous. " 'It is a well

recognized principle of statutory construction that when the Legislature has carefully employed a term in one place and has excluded it in another, it should not be implied where excluded.' " (*Grubb & Ellis Co.* v. *Bello* (1993) 19 Cal.App.4th 231, 240 [23 Cal.Rptr.2d 281], disagreed with on other grounds in *Stirlen* v. *Supercuts, Inc.* (1997) 51 Cal.App.4th 1519, 1538-1539 [60 Cal.Rptr.2d 138].) To illustrate, the Legislature included "proximate cause" in section 12022.53; the enhancement applies if a defendant "personally discharged a firearm and proximately caused great bodily injury." (§ 12022.53, subd. (d).) However, the Legislature did not employ the proximate cause concept when it articulated the requirements for enhancement under section 12022.7, but instead used the language "personally inflicts great bodily injury." (§ 12022.7, subd. (a).) Similarly, the statutory definition of a "serious felony," which was the basis for the second strike allegation in the present case, requires that the defendant have personally inflicted great bodily injury and does not include the phrase "proximate cause." (§ 1192.7, subd. (c)(8).) We decline to impute the proximate cause concept into the statute when the Legislature left it out.

Third, we are guided by CALJIC No. 17.20, which was specifically designed as a model for the parallel requirement under section 12022.7 that the defendant must have personally inflicted injury. That instruction states:

"It is alleged [in count[s] _____] that in the commission or attempted commission of the crime[s] therein described the defendant[s] _____, personally inflicted great bodily injury on [a person] [not an accomplice to the crime]. [¶] If you find a defendant guilty of _____, you must determine whether that defendant personally inflicted great bodily injury on [some person] [not an accomplice to the crime] in the commission or attempted commission of _____. [¶] 'Great bodily injury,' as used in this instruction, means a significant or substantial physical injury. Minor, trivial or moderate injuries do not constitute great bodily injury. [¶] The People have the burden of proving the truth of this allegation. If you have a reasonable doubt that it is true, you must find it to be not true. [¶] Include a special finding on that question in your verdict, using a form that will be supplied for that purpose."

CALJIC No. 17.20 does not employ or even reference the concept of proximate cause to define causation. The exclusion of the proximate cause concept in the model instruction supports our conclusion that "personally inflict" does not mean proximate cause.

The People argue that *People* v. *Dominick* (1986) 182 Cal.App.3d 1174 [227 Cal.Rptr. 849] (*Dominick*) supports their contention that the challenged

jury instruction is proper. In *Dominick*, the defendant and two codefendants were charged with, among other things, kidnapping a man and a woman, murdering the man, and raping and injuring the woman. At one point during the crime, the defendant grabbed the woman and pulled her head back so one of the codefendants could strike her with a pole. The victim broke away after being struck and fell down a nearby mountainside, seriously injuring her shoulder during the fall. (*Dominick, supra*, 182 Cal.App.3d. at pp. 1184-1186.) These actions were the basis of defendant's sentence enhancement for personal infliction of great bodily injury under section 12022.7. The defendant argued that, under *Cole*, the enhancement did not apply to him because he was just an aider and abettor and did not personally inflict injury on the woman. (182 Cal.App.3d at p. 1210.) The *Dominick* court rejected this argument and held that defendant's acts of grabbing the victim and holding her head back directly caused her to fall, so defendant was personally responsible for the injury the victim suffered from her fall down the mountainside. (*Id.* at pp. 1210-1211.)

The People interpret *Dominick* as affirming a personal infliction of bodily injury enhancement when the defendant proximately caused his victim's injury. The People ignore the evidence in *Dominick* that the defendant not only proximately but directly caused injury to the victim. The *Dominick* defendant initiated contact with the victim by holding her head down and struggling with her. He then physically restrained his victim while his codefendant struck her. The combined effect of the two defendants' affirmative and direct conduct caused the victim to fall down the mountainside and incur injury. In contrast, in this case Rodriguez did not initiate a struggle or any other physical contact with the officer. Nor can we find evidence in this record of any act by Rodriguez that directly caused the officer injury.

Further, *Dominick* is of limited value because there was no jury instruction regarding the enhancement in that case. The enhancement finding was made by a judge and the issue on appeal was whether substantial evidence supported the finding that the defendant was not an aider and abettor but was directly responsible for inflicting injury on the victim. (*Dominick, supra*, 182 Cal.App.3d at pp. 1210-1211.) In any event, we find no language in *Dominick* to support the People's contention that "personally inflict" means proximately cause. Neither *Dominick* nor any other case we have found holds that proximate cause is enough to establish personal infliction.

In summary, we find the jury instruction defining "personally inflict bodily injury" for purposes of the second strike allegation was erroneous. Proximately causing an injury is clearly different from personally inflicting an injury. Including the definition of proximate cause in the jury instruction

wrongly incorporated the concept into the meaning of "personally inflict great bodily injury."

### 3. *Prejudice*

■ Rodriguez contends the instructional error regarding the second strike allegation implicates his federal constitutional right to a jury trial and, therefore, requires reversal unless the error was harmless beyond a reasonable doubt. (*Chapman* v. *California* (1967) 386 U.S. 18 [87 S.Ct. 824, 17 L.Ed.2d 705, 24 A.L.R.3d 1065].) Our Supreme Court rejected a similar contention in *People* v. *Wims* (1995) 10 Cal.4th 293 [41 Cal.Rptr.2d 241, 895 P.2d 77], and stated that the standard set forth in *People* v. *Watson* (1956) 46 Cal.2d 818 [299 P.2d 243] governs this type of instructional error. Under *People* v. *Watson* an appellate court must affirm a judgment unless, "it is reasonably probable that a result more favorable to the [defendant] would have been reached in the absence of the error." (*People* v. *Watson*, *supra*, 46 Cal.2d at p. 836.)

Rodriguez argues he was prejudiced by the erroneous instruction because the jury was asked to decide the wrong question. The People do not address the issue of prejudice. We conclude the error was prejudicial. The instruction allowed the jury to find the second strike allegation true if it believed that Rodriguez proximately caused the officer's injuries but did not directly cause, or personally inflict those injuries. In fact, the record affirmatively suggests the jury relied on the proximate cause theory to find Rodriguez guilty of the allegation. During deliberations, the jury asked the trial court specific questions about the meaning of proximate cause. Further, although the record contains evidence Rodriguez proximately caused the officer's injury, we conclude that, as a matter of law, this record does not establish that Rodriguez directly inflicted the injury. According to the record, Rodriguez did not push, struggle or initiate any contact with the officer during the 1992 incident. Instead, the evidence shows that Rodriguez was trying to escape arrest on a bicycle and the officer injured himself when he tackled Rodriguez. Not only is it reasonably probable that a properly instructed jury would not have found Rodriguez personally inflicted the injury, there is in fact no evidentiary basis in this record for a jury to find he personally inflicted that injury.

### IV.  DISPOSITION

The finding that Rodriguez's prior conviction for resisting an officer constitutes a second strike is reversed. We remand to provide the People the option to retry Rodriguez on the second strike allegation. (*People* v. *Monge*

(1997) 16 Cal.4th 826 [66 Cal.Rptr.2d 853, 941 P.2d 1121].) In all other respects the judgment is affirmed.

Kline, P. J., and Ruvolo, J., concurred.