Filed 3/30/16  P. v. Koenig-Krutz CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>KIMBERLY MARIE KOENIG-KRUTZ,<br><br>    Defendant and Appellant. | C075575<br><br>(Super. Ct. No. 11F03046) |

While driving nearly 70 to 80 miles per hour, defendant Kimberly Marie Koenig-Krutz crossed over into oncoming traffic and hit Robert DeMarco's vehicle head-on. Although both survived, DeMarco and defendant each suffered life-threatening injuries. A jury convicted defendant of reckless driving causing injury (Veh. Code, § 23105, subd. (a), count 1), and found she personally inflicted great bodily injury on DeMarco.  (Pen. Code, § 1192.7, subd. (c)(8); unless otherwise set forth, statutory section references that follow are to the Penal Code.)  She was also found guilty of driving with a suspended

1

license.  (Veh. Code, § 14601.1, subd. (a), count 2.)  The court sentenced defendant to 16 months in prison for the reckless driving offense and a concurrent 30 days for driving on a suspended license.

On appeal, defendant contends the court erred under Evidence Code section 352 in admitting the recordings of three 911 calls since the callers testified at trial and were allegedly "screaming" during the calls, and by allowing both DeMarco and a medical expert to testify about his injuries since she offered to stipulate that he had been seriously injured in the accident.  She further argues the court erred by failing to sua sponte instruct the jury on proximate cause and personal infliction of great bodily injury.  Finding no merit in any of her contentions, we affirm the judgment.

FACTS AND PROCEEDINGS

*The Accident*

Defendant was a life flight nurse who sometimes worked long hours.  She also suffered from depression and migraine headaches.  Her primary care doctor prescribed medication for the depression and a separate medication for the headaches.

In the days leading up to December 20, 2010, defendant had worked several 24-hour shifts.  On the morning of December 20, she realized she had forgotten to take her antidepressant medication the day before so she took a double dose per her doctor's instructions.  She also had a migraine headache so she took her migraine medication in the morning and again a few hours later as prescribed.

Later that afternoon, defendant was driving eastbound on Jackson Highway towards her home in Rancho Murieta.  According to multiple witnesses who called 911, defendant was driving erratically.  She was going nearly 70 to 80 miles an hour and was weaving in and out of her lane.

DeMarco happened to be driving westbound on Jackson Highway at the same time.  Defendant's car crossed into DeMarco's lane, hitting him head on.  DeMarco was

2

severely injured in the crash. He was unconscious when emergency personnel arrived, and was airlifted to a trauma center where he underwent multiple emergency surgeries.

When officers arrived at the scene, defendant was conscious and in severe pain. She told emergency personnel to be careful with her injured legs while extracting her from her car. She also told the officer on scene that she was taking birth control pills. She did not mention the antidepressants or migraine medication that she had taken earlier in the day.

Defendant was taken to a hospital where she had previously worked as a nurse. While there, an officer overheard her tell medical personnel that she was taking vicodin. Although hospital personnel took blood and urine samples, the samples were destroyed before law enforcement officers were able to obtain the results.

*Trial Proceedings*

A two-count amended information charged defendant with felony reckless driving causing injury (Veh. Code, § 23105, subd. (a), count 1), with an attached allegation that defendant had personally inflicted great bodily injury on DeMarco (§ 1192.7, subd. (c)(8)), and driving with a suspended license (Veh. Code, § 14601.1, subd. (a), count 2). Defendant pleaded not guilty to all charges and denied the allegation. Trial was by jury.

At trial, the prosecution called two individuals, Germaine Bautiste and Burton Shafer, who witnessed defendant driving erratically the day of the accident. Bautiste had called 911 to report a suspected drunk driver who almost hit her. Burton called 911 both before and after the collision, first reporting a suspected drunk driver speeding and weaving across the highway, and later that the same car had collided head on with an oncoming vehicle, likely killing both drivers given the severity of the impact.

Over defendant's pretrial request to exclude the 911 calls as irrelevant and too prejudicial under Evidence Code section 352, redacted recordings of all three calls were

3

played for the jury during Bautiste's and Burton's testimony. The court removed all references to the word "drunk" in the calls.

DeMarco testified that on the day of the accident he had been driving to babysit his grandchildren. The next thing he remembered was waking up in a hospital room nearly a month later and being told he had been in a bad accident. Over defendant's objection, DeMarco testified to injuries he sustained in the accident, including a fractured hip and clavicle, a punctured lung, numerous broken ribs resulting in chest flail, a broken wrist, lacerations to his kidney and liver, a damaged pancreas, and an injured spleen that had to be removed. DeMarco also testified about his rehabilitative treatment following the accident. Defense counsel declined to cross examine DeMarco.

Dr. Perlstein, the trauma surgeon who treated DeMarco, testified about DeMarco's grave condition following the accident. DeMarco was in severe shock and required multiple surgeries to correct several serious injuries, which Dr. Perlstein described for the jury. Defense counsel did not cross examine him.

Defendant called several witnesses in her defense, and testified on her own behalf. She said she did not remember the accident. On direct, she described her injuries for the jury, including a traumatic brain injury, bilateral eye injuries, a broken neck, six broken ribs, a ruptured spleen, liver laceration, a torsed ovary that prevented her from having additional children, a femur fractured in three places, a fibula fracture, a shattered right arm and an ankle that had to be completely reconstructed.

She did not recall having any conversations with law enforcement at the scene about medication she had taken. Nor did she remember what she told hospital personnel about vicodin, which she had been prescribed to take as needed. She admitted taking a double dose of her antidepressant medication the morning of the accident, and also taking migraine medication as well. She did not believe either medication came with a warning against driving after taking the pills, and denied ever seeing such warnings if they

existed. She said she never would have intentionally driven in the manner described by the eyewitnesses.

Defendant called Dr. Samimi as a medical expert. After reviewing defendant's medical records and interviewing her, he opined that her erratic driving the day of the accident was likely the result of a drop in her sodium level. Low sodium levels, or hyponatremia, may cause an individual to become incoherent and confused and can even lead to convulsive seizures. Although Dr. Samimi acknowledged defendant's sodium levels were in the normal range when she was first admitted to the emergency room, he testified that records showed her sodium level began dropping to an abnormal level nine days later. Dr. Samimi attributed defendant's normal sodium level the day of the crash to defendant being given 1,000 milliliters of sodium chloride en route to the hospital.

Dr. Samimi testified further that he believed defendant also might have suffered from serotonin syndrome based on the medications she was taking. Serotonin syndrome can result in confusion, incoherence, spasm, muscle twitching, and rapid fluctuations in blood pressure and heart rate. In Dr. Samimi's opinion, the combined effects of defendant's antidepressant medication and her migraine medication could have had such a synergistic effect.

During closing arguments, defense counsel repeatedly emphasized that the primary issue before the jury was defendant's mental state at the time of the accident. Counsel told the jury that "[i]t's all about what's going on in Ms. Krutz' head back on December 20th of 2010." After conceding DeMarco had been gravely injured through no fault of his own, defense counsel acknowledged that defendant in fact caused the injuries.

The jury convicted defendant of all charges and found true the great bodily injury allegation attached to count 1. She was sentenced to 16 months in prison for the reckless driving offense in count 1 and a concurrent 30 days for driving on a suspended license in count 2.

5

DISCUSSION

I

*Evidence Code Section 352*

Defendant contends the court twice erred by admitting evidence that was more prejudicial than probative under Evidence Code section 352. She characterizes the 911 calls and testimony from both DeMarco and Dr. Perlstein about DeMarco's injuries as cumulative and unduly inflammatory.

Evidence Code section 352 allows a court "in its discretion [to] exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) The prejudice referred to in section 352 is not the prejudice to a defendant that naturally flows from probative evidence tending to demonstrate guilt of a charged offense, but rather the prejudice resulting from " 'evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues. In applying section 352, "prejudicial" is not synonymous with "damaging." ' [Citation.]" (*People v. Karis* (1988) 46 Cal.3d 612, 638.)

Trial courts exercise discretion in determining the admissibility of evidence under Evidence Code section 352. (*People v. Ochoa* (2001) 26 Cal.4th 398, 437, disapproved on other grounds in *People v. Prieto* (2003) 30 Cal.4th 226, 263, fn. 14.) Reversal is warranted only when " ' "the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice." ' " (*Id.* at pp. 437-438.)

*Admissibility of 911 Tape Recordings*

Defendant first argues the 911 calls were cumulative since both Bautiste and Shafer testified at trial. And despite redacting any references to a "drunk" driver, she

claims the calls were highly inflammatory because the callers were allegedly "stressed" and "screaming."

Courts routinely admit 911 calls reporting a witness's perception of a stressful incident even where the witness later testifies at trial about the same event. (See e.g., *People v. Boyce* (2014) 59 Cal.4th 672, 687 (*Boyce*) [evidence of two 911 calls made immediately after the victim was shot in the head was not unduly inflammatory or prejudicial even though both callers were trial witnesses]; *People v. Hawthorne* (2009) 46 Cal.4th 67, 101 (*Hawthorne*) [admission of 911 tape was not unduly prejudicial or cumulative as victim impact evidence even though 911caller, who testified at trial, was heard screaming on the recording], abrogated on other grounds by *People v. McKinnon* (2011) 52 Cal.4th 610, 637-638.)

Here, the 911 calls provide a contemporaneous account of defendant's driving as well as the accident. That Bautiste and Shafer also testified at trial does not render the calls cumulative. (*Boyce, supra,* 59 Cal.4th at p. 688 [911 calls not cumulative even though callers "testified in detail at trial"].) "[T]he court had broad discretion to admit corroborating evidence that was nearly contemporaneous with the crimes." (*Ibid.*)

The 911 tapes also assisted the jury in evaluating the credibility of the prosecution's witnesses. The defense attempted to show that Shafer, in particular, was not a reliable witness. In closing, defense counsel characterized his testimony as exaggerated and unbelievable. By listening to the tapes, the jury was able to evaluate firsthand Shafer's demeanor and account in the moments immediately before and after the accident, and compare that with the testimony he gave on the stand.

After listening to the 911 calls, we do not agree that the calls were highly inflammatory. Although defendant claims Bautiste and Shafer are "screaming" and "stressed" during the calls, the recordings prove otherwise.

Defendant appears to merely reiterate comments the trial court made when initially ruling on the admissibility of the calls. Yet the trial judge made clear that he had

not yet *heard* the calls when he made the comments. During the calls, both Bautiste and Shafer are calm, answering the dispatcher's questions about their location, the license plate vehicle number, and the events taking place. No one is heard screaming. Neither Bautiste's, nor Shafer's comments and affect were unduly shocking, especially considering the nature of the conduct they were describing and the severity of the collision.

Even assuming for sake of argument that the trial court's initial comments that the 911 callers were screaming and distressed were accurate, it would not have been an abuse of discretion to admit the calls. Each of the callers in *Boyce* and *Hawthorne* were described as being distressed or upset when they made the 911 calls, yet admitting the calls did not violate Evidence Code section 352. (*Boyce, supra,* 59 Cal.4th at pp. 687-688 [acknowledging that women were "certainly in distress" when they called 911]; *Hawthorne, supra,* 46 Cal.4th at p. 101 [caller's screaming heard in the background of the 911 tape, which another witness described as "hysterical"].) So, too, was the husband in *People v. Roybal* (1998) 19 Cal.4th 481, 515-517 (*Roybal*), who called 911 after finding his wife murdered in their home. According to the court, the 911 tape revealed he was "upset" upon discovering the body of his murdered wife, and that the dispatcher had to tell him to "calm down just a moment" during the call. Given the circumstances in *Boyce*, *Hawthorne*, and *Roybal*, where the Supreme Court found no abuse of discretion under Evidence Code section 352, we similarly find no abuse of discretion here in admitting the recordings of the three 911 calls made by Bautiste and Shafer.

*Evidence of DeMarco's Injuries*

Prior to trial, defendant offered to stipulate to the injuries DeMarco suffered in the crash, arguing that the injury evidence was not relevant because the injuries were not an element of the reckless driving offense under section 23105, subdivision (a), but rather a sentence limitation to which she could stipulate. The prosecution refused to stipulate,

8

and the court agreed that the People had the right to so refuse and to present the jury with evidence of DeMarco's injuries.

Defendant now contends the court erred in allowing the prosecutor to reject the defense offer to stipulate to the seriousness of DeMarco's injuries and in allowing Dr. Perlstein to testify about the injuries after DeMarco had already done so. She argues such testimony was cumulative and had a lessened probative value in light of defendant's stipulation offer and thus should have been excluded under Evidence Code section 352.

" 'As a rule, the prosecution in a criminal case involving charges of murder or other violent crimes is entitled to present evidence of the circumstances attending them even if it is grim' [citation], and even if it 'duplicate[s] testimony, depict[s] uncontested facts, or trigger[s] an offer to stipulate' [citation]." (*Boyce, supra,* 59 Cal.4th at p. 687.) "The circumstance that the defense might have preferred that the prosecution establish a particular fact by stipulation, rather than by live testimony, does not alter the probative value of such testimony or render it unduly prejudicial. The prosecution [is] not required to accept such a stipulation or other 'sanitized' method of presenting its case." (*People v. Carter* (2005) 36 Cal.4th 1114, 1169-1170 (*Carter*); see also *People v. Edelbacher* (1989) 47 Cal.3d 983, 1007 [prosecution "cannot be compelled to accept a stipulation if the effect would be to deprive the state's case of its persuasiveness and forcefulness"].)

In *People v. Scheid* (1997) 16 Cal.4th 1, 14 (*Scheid*), for example, our Supreme Court found a gory crime scene photograph relevant and admissible even though the defense had offered to stipulate to the cause of death and to the weapon used in the murder. The court concluded that "[t]he defense's offer to stipulate as to the fact or manner of the shootings did not negate the relevance of the photograph. 'The prosecutor " 'was not obliged to prove these details solely from the testimony of live witnesses' . . . or to accept antiseptic stipulations in lieu of photographic evidence." ' " (*Id.* at pp. 16-17.)

9

Citing *Old Chief v. United States* (1997) 519 U.S. 172 (*Old Chief*), which involved a felon in possession of a firearm charge, defendant nevertheless argues that allowing the People to present evidence of DeMarco's injuries was an abuse of discretion given the discounted probative value of such evidence in light of defendant's offer to stipulate. While *Old Chief* does acknowledge that the probative value of evidence may be calculated by comparing evidentiary alternatives available (*Old Chief, supra,* 519 U.S. at p. 184), the decision was expressly "limited to cases involving proof of felon status[,]" something not at issue here. (*Old Chief, supra,* 519 U.S. at p. 183, fn. 7.) And even *Old Chief* recognizes that a defendant's offer "to concede a point generally cannot prevail over the Government's choice to offer evidence showing guilt and all the circumstances surrounding the offenses." (*Ibid.*)

As the court in *Old Chief* emphasized, "the accepted rule that the prosecution is entitled to prove its case free from any defendant's option to stipulate the evidence away rests on good sense." (*Id., supra,* 519 U.S. at p. 189.) "A syllogism is not a story, and a naked proposition in a courtroom may be no match for the robust evidence that would be used to prove it. People who hear a story interrupted by gaps of abstraction may be puzzled at the missing chapters, and jurors asked to rest a momentous decision on the story's truth can feel put upon at being asked to take responsibility knowing that more could be said than they have heard . . . an assurance that the missing link is really there is never more than second best." (*Ibid.*)

Here, unlike in *Old Chief*, the prosecution was not seeking to prove defendant's *status* based on a prior conviction. Instead, the prosecution sought to establish beyond a reasonable doubt the full panoply of harmful consequences resulting from defendant's reckless driving, which was an element of the charged Vehicle Code section 23105, subdivision (a) offense. The trial court thus did not abuse its discretion in refusing to force the prosecutor to accept defendant's sanitized stipulation over more impactful live

10

testimony. Nor did it err in admitting the evidence of DeMarco's injuries despite defendant's offer to stipulate.

Our Supreme Court has also considered and rejected a cumulative evidence argument similar to the one defendant raises here. In *People v. Zambrano* (2007) 41 Cal.4th 1082, 1137-1138 (*Zambrano*), disapproved on other grounds by *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22, the defendant objected that the testimony of a medical expert regarding the victims' injuries and prognoses was cumulative and unduly prejudicial under Evidence Code section 352 because other witnesses had already testified to the victims' injuries. The court ruled the evidence was properly admitted, noting that information about the full extent of the victims' conditions following defendant's attack was directly relevant and probative as to the allegation, not formally conceded by the defendant, that he inflicted great bodily injury on the victims. (*Id.* at p. 1137.) It also focused on the long-term effects of the victims' injuries, information not provided by other prosecution witnesses. (*Id.* at p. 1138.)

The court also rejected the notion that the medical expert's testimony was too prejudicial, which for purposes of Evidence Code section 352, meant "uniquely inflammatory without regard to relevance." (*Zambrano, supra,* 41 Cal.4th at p. 1138.) The "evidence that the victims . . . suffered not only severe acute trauma, but also substantial long-term deficits and disabilities, as the result of defendant's vicious attack was not unduly prejudicial" . . . because it was logically related to the issues and presented in a nonsensational way through an expert witness. (*Ibid.*)

Here, Dr. Perlstein's testimony regarding DeMarco's injuries was neither too inflammatory nor cumulative of DeMarco's own brief testimony concerning his injuries. Whereas DeMarco testified about waking up in the hospital and being informed he was in an accident, Dr. Perlstein testified about DeMarco's physical state upon arriving at the hospital. Dr. Perlstein described the shock DeMarco was suffering from immediately after the accident and the surgeries he had to perform to stabilize him. DeMarco briefly

recounted his injuries, but primarily testified about his rehabilitation efforts and the disabilities he continues to endure from the collision.

That DeMarco may have been emotional during his testimony also did not render such evidence too prejudicial. In criminal trials, testimony punctuated with emotion by witnesses who have been adversely affected by an offense is not unexpected. (See e.g., *Carter, supra,* 36 Cal.4th at p. 1169 [testimony from victim's sister, who cried during testimony, was not unduly prejudicial despite expression of emotion].)

Finally, we note the obvious incongruity in defendant's argument that evidence of DeMarco's injuries should have been excluded as too inflammatory when she, her husband, and Dr. Samimi, her medical expert, all testified in detail about the serious injuries she sustained in the accident. If testimony concerning her injuries was proper, we cannot see how evidence regarding DeMarco's injuries was not, especially since his injuries were an element of the Vehicle Code section 23105, subdivision (a) offense. (Veh. Code, § 23105, subd. (a).)

II

*Instructional Error*

Defendant contends the court had a sua sponte duty to instruct the jury on the different degrees of causation required for the reckless driving charge and the attached great bodily injury allegation. According to defendant, the court failed to instruct the jury on the meanings of "proximate[ly] caus[ing]" an injury, "personal[ly] inflict[ing]" an injury, and the difference between the two. She points to a question from the jury asking whether personally inflicting great bodily injury was a second charge as evidence that the jury was confused about causation.

Respondent, on the other hand, argues defendant's mental state--and not causation--was at issue below. The People thus contend that the court had no sua sponte duty to specifically define proximate cause for the jury. The People further contend that

12

the court had no obligation to clarify the meaning of "personally inflict[s]" because the phrase is not used in any technical, legal sense.

We agree with the People. But even if the court erred in instructing the jury on causation, we conclude it was harmless.

" ' "It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case." ' " (*People v. Breverman* (1998) 19 Cal.4th 142, 154 (*Breverman*).)

The duty to instruct, sua sponte, on general principles closely and openly connected with the facts before the court encompasses an obligation to instruct on all essential elements of the charged offense where it relates to a material issue presented by the evidence. (*People v. Banks* (1983) 147 Cal.App.3d 360, 367 (*Banks*).) For words or phrases that have a plain, unambiguous meaning, the court is not required to give an instruction to amplify or clarify the meaning absent a request. (*People v. Estrada* (1995) 11 Cal.4th 568, 574-575 ["[T]erms are held to require clarification by the trial court when their statutory definition differs from the meaning that might be ascribed to the same terms in common parlance"]; *People v. Hudson* (2006) 38 Cal.4th 1004, 1012.)

We address the "personally inflict[ing]" issue first. For the allegation attached to the reckless driving charge, the court instructed the jury, in part, as follows: "If you find the defendant guilty of the crime charged in Count 1, you must then decide whether the People have proved the additional allegation that the defendant personally inflicted great bodily injury on Robert Wayne Demarco in the commission of that crime." Although the court defined "great bodily injury," it did not define "personally inflict[s]."

It is well settled that a court has no sua sponte duty to define the phrase "personally inflict[s]." (See *People v. Cross* (2008) 45 Cal.4th 58, 67-68 (*Cross*) ["the

13

meaning of the statutory requirement that the defendant *personally inflict* the injury does not differ from its nonlegal meaning"]; see also *People v. Warwick* (2010) 182 Cal.App.4th 788, 795 [the court has no sua sponte duty to instruct on the meaning of "personally inflict" as that term has the same legal and nonlegal meaning].) "Commonly understood, the phrase 'personally inflicts' means that someone 'in person' (Webster's 7th New Collegiate Dict. (1970) p. 630), that is, directly and not through an intermediary, 'cause[s] something (damaging or painful) to be endured.' " (*Cross, supra,* 45 Cal.4th at p. 68.)

*People v. Rodriguez* (1999) 69 Cal.App.4th 341 (*Rodriguez*), which defendant cites for the proposition that "personally inflict[s]" does have a legal meaning different from its common usage, does not dictate a contrary result. *Rodriguez* simply stands for the proposition that one can proximately cause an injury without personally inflicting it, and when a statute requires "personal[] inflict[ion]" of an injury it is error to instruct the jury on "proximately caus[ing]" an injury. (*Id.* at pp. 347-348.) But *Rodriguez* neither hints, nor holds, that a court has a sua sponte duty to define "personally inflict[s]" for the jury.

In *Rodriguez*, the prosecution included a second strike allegation against the defendant that one of his prior convictions was a serious felony under Penal Code section 1192.7, subdivision (c)(8), meaning that it was a felony in which the defendant "personally inflict[ed] great bodily injury" on someone other than an accomplice. (*Rodriguez, supra,* at pp. 345-346.) The prior conviction, however, was for a crime that merely required that the defendant's actions "proximately cause[d]" death or serious bodily injury. (§ 148.10; see *Rodriguez, supra,* at pp. 345-346.) The court instructed the jury in terms of proximate cause and the jury found that the prior conviction was serious within the meaning of section 1192.7. (*Rodriguez* at p. 351.)

In reversing, the appellate court concluded that proximately causing an injury is clearly different from personally inflicting an injury. (*Rodriguez, supra,* 69 Cal.App.4th

14

at pp. 347-348; see also *People v. Valenzuela* (2010) 191 Cal.App.4th 316, 322-323 [defendant's prior plea to reckless driving proximately causing injury insufficient to establish that he personally inflicted injury for purpose of establishing a serious felony under three strikes law].) The court found the proximate cause instruction was wrong because it allowed the jury to find against the defendant if the injury was a direct, natural and probable consequence of the defendant's action, even if he did not personally inflict the injury. (*Rodriguez, supra,* 69 Cal.App.4th at p. 348.) It was in this context that the court commented "personally inflict" has a distinct meaning, i.e., distinct from proximate cause and not distinct from its common usage to those who are familiar with the English language. (*Id.* at pp. 348-349 [use of " 'personally inflict[s]' . . . signifies a legislative intent to punish only the actor who directly inflicts an injury"].)

Notably, *Rodriguez* itself recognizes that to "personally inflict" an injury, an actor must "directly, personally, himself inflict the injury." (*Rodriguez* at p. 349.) This definition does not differ from that provided by our Supreme Court in *Cross*, which specifically found that "personally inflicts" need not be further clarified absent a request because the term's meaning does not differ under legal and nonlegal circumstances. (*Cross, supra,* 45 Cal.4th at p. 68.)

We now turn to the proximate cause issue. The court instructed the jury that to find defendant guilty of violating Vehicle Code section 23105, subdivision (a), as alleged in count 1, the People had to prove: "1. The defendant drove a vehicle upon a street or highway; [¶] 2. The defendant intentionally drove with wanton disregard for the safety of persons or property; and [¶] 3. The defendant's driving caused another person to suffer one or more of the following injuries: a loss of consciousness, a concussion, a bone fracture, a protracted loss of impairment of function of a bodily member or organ, a wound requiring extensive suturing, a serious disfigurement, brain injury or paralysis."

While Vehicle Code section 23105, subdivision (a) states that "[a] person convicted of reckless driving in violation of Section 23103 that proximately causes"

15

certain injuries is subject to punishment (Veh. Code, § 23105, subd. (a)), neither the court nor the written instruction specifically referred to "proximate cause." Instead, the instructions simply referred to reckless driving "causing" injury, and no definition of that term or proximate cause was given.

Defendant contends the court should have instructed the jury with CALCRIM No. 240, which generally provides that an act causes an injury if it is the direct, natural, and probable consequence of the act and the injury would not have happened without the act. (CALCRIM No. 240.) The instruction also contains a bracketed paragraph regarding an act being a substantial factor in an injury if there are multiple potential causes. (CALCRIM No. 240.)

In *People v. Bland* (2002) 28 Cal.4th 313, 335 (*Bland*), our Supreme Court recognized that "proximate causation *does* have a meaning peculiar to the law, and that a jury would have difficulty understanding its meaning without guidance." " 'It is reasonably likely that when jurors hear the term "proximate cause" they may misunderstand its meaning . . . .' " (*Ibid.*) Thus, a court has a sua sponte duty to instruct on the definition and application of proximate cause if causation is at issue. (*Id.* at p. 334; see also *Banks, supra,* 147 Cal.App.3d at p. 367.)

The question becomes whether causation was in fact at issue below. Proximate cause is ordinarily at issue in two circumstances (*People v. Palmer* (2005) 133 Cal.App.4th 1141, 1153 (*Palmer*)): first, where there may be more than one perpetrator of an injury (see e.g., *Bland, supra,* 28 Cal.4th at p. 318 [more than one shooter involved and the evidence was unclear on who fired the shots that hit the victim]), and second, where an act itself does not cause an injury, but is within the chain of events that ultimately does cause the injury (see e.g., *Palmer, supra,* 133 Cal.App.4th at pp. 1153-1154 [finding defendant's act of discharging a firearm proximately caused officer's injury although officer was injured diving for cover rather than from being shot]).

16

In this case, defendant conceded that she caused DeMarco's injuries. In closing, defense counsel stated: "But the damage she caused is great, no doubt about it. There's a lot of unanswered questions of why, but she caused it." Counsel also acknowledged that DeMarco was blameless and did not contribute to the incident in any manner.

Even without defendant's concession that her driving caused DeMarco's injuries, the undisputed evidence at trial showed that defendant was the only person in her car and that she had to be extracted from the driver's seat. The jury reasonably could have inferred from this evidence that defendant was the car's driver. The undisputed evidence also showed that her car crossed into oncoming traffic and hit DeMarco head on. There were no other cars involved in the accident. Defendant drove directly into DeMarco without any other person or actor intervening. Thus, unlike in *Bland* and *Palmer*, it does not appear that causation was actually at issue here.

Defendant argues, however, that proximate cause was at issue because she presented evidence that her reckless driving resulted from various medical conditions, namely, a drop in sodium levels and a synergistic interaction between her prescription medications, which could have resulted in a loss of consciousness or seizures. Yet, as the People point out and we agree, this evidence did not go to causation but rather to whether she had the requisite mental state of intentionally driving with a wanton disregard for the safety of others when she collided with DeMarco. Defendant's own counsel repeatedly argued to the jury that she did not have the specific intent to drive recklessly; she never contested or raised causation, proximate or otherwise, as an issue.

Even if we were to assume the court erred in failing to define proximate cause, we find the instructional error harmless under any standard. (*Bland, supra,* 28 Cal.4th at pp. 335, 338 [court's error in not defining proximate cause was not prejudicial under any standard]; *People v. Watson* (1956) 46 Cal.2d 818, 836-837 [reversal required only if it is reasonably probable the jury would have returned a different verdict absent the error]; *Chapman v. California* (1967) 386 U.S. 18, 24 [error is prejudicial unless it can be

17

deemed harmless beyond a reasonable doubt].)  We first note that neither the court nor the written instructions referred to "proximate cause."  Having never heard or seen the term in the jury instructions, it is unlikely jurors could have been confused by its meaning.

In any event, proximate cause is broader than what jurors commonly understand it to mean.  (*Bland, supra,* 28 Cal.4th at p. 338 ["The correct definition of proximate cause is *broader*, not narrower, than jurors might assume"].)  Here, the jury found true the allegation that defendant personally inflicted great bodily injury on DeMarco, meaning that she *directly caused* significant or substantial physical injury to DeMarco that was more than minor or moderate harm.  It is not reasonably probable the jury would have found she did not proximately cause those same injuries for purposes of Vehicle Code section 23105, subdivision (a).  As *Rodriguez* makes clear, one can proximately cause an injury even though he does not directly cause it.  (*Rodriguez, supra,* 69 Cal.App.4th at p. 349.)  One cannot, however, directly inflict an injury without also being a proximate cause of the injury.  (*Miles v. Van Hagen* (1942) 53 Cal.App.2d 750, 757 [" 'a proximate cause may be either a direct or an indirect cause' "].)

Given the overwhelming evidence against defendant and because the jury found she directly inflicted the serious injuries on DeMarco, we are convinced beyond a reasonable doubt the outcome would have been the same even if the court had instructed the jury in the manner defendant now asserts.  Any purported error was not prejudicial.

DISPOSITION

The judgment is affirmed.

       <u>     HULL           </u>, J.

We concur:

<u>     BLEASE        </u>, Acting P. J.

<u>     NICHOLSON    </u>, J.